Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:	(916) 443-6911
Facsimile:	(916) 447-8336
E-Mail:	mark@markmerin.com
	paul@markmerin.com

Attorneys for Plaintiffs
PATRICK MAHONEY, CAROLINE KENNEDY, SURACHA XIONG,
and BRANDON ALLEN, SR.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| PATRICK MAHONEY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SACRAMENTO, et al., <br><br> Defendants. | Case No. <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Date: TBD <br> Time: TBD <br> Location: Robert T. Matsui U.S. Courthouse <br> 501 I Street <br> Sacramento, CA 95814 <br> Courtroom: TBD <br> District Judge: TBD |

## I. INTRODUCTION

Plaintiffs, homeless members of a community calling themselves "Hopeful Community" who have been living in tents without access to restroom facilities until a port-a-potty was placed near them by concerned citizens, seek a temporary restraining order to enjoin Defendants City of Sacramento, Sacramento Police Department, and Doe 1 to 50 from removing or ordering the removal of the port-a-potty located near their encampment of approximately thirty (30) homeless persons on North B Street in Sacramento, west of North 7th Street, until such time that a motion for preliminary injunction may be heard by the Court.

## II. STATEMENT OF RELEVANT FACTS

The number of homeless people attempting to survive, unsheltered, in the City of Sacramento skyrocketed by 85% between 2015 and 2017 and increased an additional 19% in the two years that followed. Vastly undercounted, the number of unsheltered homeless people continued to increase, causing the City Council in January, 2020, to declare a shelter crisis suspending provisions of state and local regulatory statutes, regulations, and standards of housing, health or safety which otherwise hinder provision of shelter to homeless persons.

Not surprisingly, without public restrooms available where homeless people survive on and near Sacramento rivers, human waste pollutes the rivers and streams leading to public outcries to our elected leaders to "do something to avert this crisis!" Equally unsurprising is the threat to the health and the lives of homeless people themselves from the lack of basic necessities like protection from the weather, sanitation and water. From 2016 to 2017 the number of deaths among the unsheltered homeless population rose by 75% and is four times that of the death rate in the general population.

While politicians fret, and pay consultants to plan and advise, but still fail to provide for shelter or restrooms, a few private citizens have stepped up to place and service port-a-potties where homeless encampments have sprung up. What does the City do? Order the portable toilets removed, endangering public health and depriving the homeless people who use the port-a-potties of dignity and the opportunity to dispose of their human waste in sanitary fashion.

This action seeks to enjoin the City and its Police Department from removing or ordering the removal of a single port-a-potty placed in a convenient spot adjacent to a homeless tent encampment on

1

North B street in Sacramento, a community designated by its occupants "Hopeful Community," until this Court can determine if federal, state, and local law precludes the City from endangering the health and welfare of the populace by removing a port-a-potty which provides the only sanitary way that a community of homeless persons in the immediate area can dispose of their human waste.

In order to assist Hopeful Community whose homeless members are living on both sides of North B street, west of 7th Street, a compassionate private citizen contracted with a company to place, service regularly and maintain a port-a-potty near the encampment. The port-a-potty was placed on January 16, 2020, and the grateful community members, the class of plaintiffs herein, agreed to and did clean and protect the port-a-potty.

For nine days members of the Hopeful Community celebrated the presence of the port-a-potty, used it, kept it clean, and felt more human and dignified by the presence and accessibility of the convenience. Then, after nine days, abruptly and without notice, the port-a-potty was removed on orders of the Sacramento City Police and the Hopeful Community was crushed and dejected.

The public spirited citizen, this time joined by others, arranged for the replacement of the port-a-potty for the Hopeful Community's use with renewed commitment to do whatever was necessary to protect the right of homeless people to dispose of their waste in a dignified and sanitary fashion.

The port-a-potty was replaced on Monday, February 3, 2020, but, unless this Court issues an order temporarily enjoining defendants City of Sacramento, the Sacramento Police Department, and their agents and employees from removing or ordering the removal of the port-a-potty, it will be removed consistent with the practice of Defendants to deny homeless people access to bathroom facilities.

Defendants City of Sacramento and Sacramento Police Department have a policy and practice of denying homeless people, living unsheltered throughout the City, access to sanitary bathroom facilities and preventing private citizens, even at their own expense, from providing port-a-potties for the use of homeless encampments located where no public bathrooms are available. This cruel, inhumane, illegal and unconstitutional policy and practice includes removing or ordering removal of port-a-potties which are made available to homeless encampments.

The apparent purpose and intent of the Defendants' policy of preventing placement and ordering removal of port-a-potties placed for the use of homeless encampments is to make the lives of homeless

2

people even more miserable and dangerous that it already is in the misguided and cynical hope that the homeless people will then just disappear.

This policy cannot and will not succeed in accomplishing the elimination of homeless people, but what it has done and will do is immiserate homeless people while furthering the pollution of the city and surrounding environment as urine and human feces are deposited directly or indirectly in rivers and streams.

The removal of an essential port-a-potty from the Hopeful Community's location is contrary to the spirit of the recently declared "Shelter Crisis" and violates the state and federal constitutions.

### III.     ARGUMENT

A temporary restraining order may issue without notice to an adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose for issuing a temporary restraining order is to preserve the *status quo* pending a fuller hearing. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The applicable standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.2001).

In order to prevail on a motion for injunctive relief, the moving party must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that the relief sought is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "[A] court is permitted to consider inadmissible evidence at the preliminary injunction stage." *Cazorla v. Hughes*, No. 2:14-cv-02112-MMM-CW, 2014 U.S. Dist. LEXIS 188404, at *13-15 (C.D. Cal. Apr. 7, 2014) (collecting cases).

\ \ \

3

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**
*Mahoney v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

A. **MERITS**

    1. **Right To Privacy (U.S. Const., Amend. XIV, § 1)**

A privacy right against certain kinds of governmental intrusions under the Due Process Clause of the Fourteenth Amendment has been recognized. *See*, *e.g.*, *Katz v. United States*, 389 U.S. 347, 350 (1967); *Roe v. Wade*, 410 U.S. 113, 152 (1973). "[O]nly personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' are included in this guarantee of personal privacy." *Roe*, 410 U.S. at 152 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). The Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks & citations omitted).

"[T]here are few activities that appear to be more at the heart of the liberty guaranteed by the Due Process Clause of the Fourteenth Amendment than the right to eliminate harmful wastes from one's body away from the observation of others. The activity is universally recognized as a private one." *West v. Dallas Police Dep't*, No. 3:95-cv-01347-P, 1997 U.S. Dist. LEXIS 23900, at *19 (N.D. Tex. July 31, 1997);[1] *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 645-46 (1989) (dis. opn. of Marshall, J.) ("Urination is among the most private of activities. It is generally forbidden in public, eschewed as a matter of conversation, and performed in places designed to preserve this tradition of personal seclusion. . . '[I]n our culture the excretory functions are shielded by more or less absolute privacy, so much so that situations in which this privacy is violated are experienced as extremely distressing, as detracting from one's dignity and self esteem.'" (quoting Charles Fried, *Privacy*, 77 Yale L. J. 475, 487 (1968)). Where "the United States Supreme Court has held that the personal, intimate nature of other activities necessitates their constitutional protection from unnecessary governmental interference; there is certainly nothing to indicate that an activity as basic and private as urination should

---

[1] Most cases involving denial of access to a toilet involved detainees or comparably-detained persons in custody. *See*, *e.g.*, *West*, 1997 U.S. Dist. LEXIS 23900, at *19 (pretrial detainee); *Glaspy v. Malicoat*, 134 F. Supp. 2d 890, 896 (W.D. Mich. 2001) (correctional facility visitor). However, custody is not required element of a due process claim. *See*, *e.g.*, *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) ("*DeShaney* did not rule that custody was required where the state affirmatively causes the harm.").

4

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**
*Mahoney v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

not be included as a part of that framework." *Id*. at *19-20 (internal fns. omitted). Accordingly, "an individual's ability to urinate or defecate in reasonable privacy is clearly established as a right which affords Fourteenth Amendment protection." *Id*. at *20.

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). "Conscience-shocking actions are those taken with (1) 'deliberate indifference' or (2) a 'purpose to harm … unrelated to legitimate law enforcement objectives." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). "The lower 'deliberate indifference' standard applies to circumstances where 'actual deliberation is practical.'" *Id*. (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). "However, in circumstances where an officer cannot practically deliberate, such as where 'a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.'" *Ibid*. In a case such as this, where the official decision involves the denial of the use of a toilet, the lower "deliberate indifference" standard applies, *see Glaspy*, 134 F. Supp. 2d at 896, because deliberation is practical for such a decision and does not require "a snap judgment because of an escalating situation," *see A.D.*, 712 F.3d at 453.

Members of the Plaintiff class, the Hopeful Community, many of them disabled and using walkers and wheelchairs, would be without access to restroom facilities if the port-a-potty at their location were removed. They would be forced to urinate and defecate outdoors, without the privacy to which they are constitutionally entitled, fouling the environment and endangering the lives and health of the community at large while suffering humiliation and degradation. Such a state should not be tolerated by a civilized society.

These circumstances, "if proven to be true, could be sufficient to establish … [D]efendants acted with deliberate indifference to the [P]laintiff[s'] fundamental right to use the restroom." *See Thompson v. Spurgeon*, No. 3:13-cv-00526, 2013 WL 2467755, 2013 U.S. Dist. LEXIS 80098, at *6-7 (M.D. Tenn. June 7, 2013).

\ \ \

5

### 2. Right To Bodily Integrity (U.S. Const., Amend. XIV, § 1.)

"[A] person's liberty interest in bodily integrity is one of the personal rights accorded substantive protection under the Due Process Clause." *Johnson v. Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 272 (1994)). "[T]he ability/opportunity to urinate, being a matter of bodily integrity, is a fundamental right subject to due process protection." *Glaspy v. Malicoat*, 134 F. Supp. 2d 890, 895 (W.D. Mich. 2001).

Members of the Plaintiff class, the Hopeful Community, many of them disabled and using walkers and wheelchairs, would be without access to restroom facilities if the port-a-potty at their location were removed. Denial of such access endangers the lives and health of the Plaintiff class. Such a state should not be tolerated by a civilized society.

These circumstances, "if proven to be true, could be sufficient to establish … [D]efendants acted with deliberate indifference to the [P]laintiff[s'] fundamental right to use the restroom." *See Thompson v. Spurgeon*, No. 3:13-cv-00526, 2013 WL 2467755, 2013 U.S. Dist. LEXIS 80098, at *6-7 (M.D. Tenn. June 7, 2013).

### 3. State-Created Danger (U.S. Const., Amend. XIV, § 1)

A state's failure to protect an individual may violate the Due Process Clause of the Fourteenth Amendment "where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. Ridgefield City*, 439 F.3d 1055, 1061 (9th Cir. 2006) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 197 (1989)). "The affirmative act must create an actual, particularized danger," "the ultimate injury to the plaintiffs must be foreseeable," and "[t]he employees must have also acted with deliberate indifference to a known or obvious danger." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (internal citations & quotation marks omitted). The danger to which a plaintiff is exposed may come in various forms. *See*, *e.g.*, *L.W. v. Grubbs*, 974 F.2d 119, 121-23 (9th Cir. 1992) (third-party violence); *Penilla v. City of Huntington Park*, 115 F.3d 707, 709-10 (9th Cir. 1997) (serious medical needs); *Munger v. Glasgow Police Dep't*, 227 F.3d 1082, 1085-87 (9th Cir. 2000) (dangerous weather conditions); *Pauluk v. Savage*, 836 F.3d 1117, 1123-25 (9th Cir. 2016) ("physical condition" of a workplace). For example, a local government may be subject to

6

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**
*Mahoney v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

liability under the state-created danger theory where it destroys homeless persons' shelter and property despite extreme weather conditions. *See*, *e.g.*, *Jeremiah v. Sutter County*, No. 2:18-cv-00522-TLN-KJN, 2018 WL 1367541, 2018 U.S. Dist. LEXIS 43663, at *11-12 (E.D. Cal. Mar. 16, 2018); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1099-102 (E.D. Cal. 2012).

Members of the Plaintiff class, the Hopeful Community, many of them disabled and using walkers and wheelchairs, would be without access to restroom facilities if the port-a-potty at their location were removed. They would be forced to urinate and defecate outdoors, without the privacy to which they are constitutionally entitled, fouling the environment and endangering the lives and health of the community at large while suffering humiliation and degradation. Additionally, denial of access to restroom facilities endangers the lives and health of the Plaintiff class. Such a state should not be tolerated by a civilized society.

### 4.   Punishment For Involuntary Conduct (U.S. Const., Amend. VIII)

The U.S. Supreme Court's decision in *Robinson v. California*, 370 U.S. 660 (1962), "stand[s] for the proposition that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *Jones v. City of Los Angeles*, 444 F.3d 1118, 1135 (9th Cir. 2006); *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019). "This principle compels the conclusion that the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Martin*, 920 F.3d at 616.

> "Whether sitting, lying, and sleeping are defined as acts or conditions, they are universal and unavoidable consequences of being human." Moreover, any "conduct at issue here is involuntary and inseparable from status — they are one and the same, given that human beings are biologically compelled to rest, whether by sitting, lying, or sleeping." As a result, just as the state may not criminalize the state of being "homeless in public places," the state may not "criminalize conduct that is an unavoidable consequence of being homeless — namely sitting, lying, or sleeping on the streets."

*Id.* at 616-17 (quoting *Jones*, 444 F.3d at 1136-37). However, this principle is not limited to "sitting, lying, or sleeping on the streets" but also encompasses "'other life-sustaining activities,'" such as "'eating and other innocent conduct.'" *Id.* at 617 (quoting *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1565 (S.D. Fla. 1992)). "Other life-sustaining activities" and "innocent conduct" must encompass "the

7

right to eliminate harmful wastes from one's body." *See*, *e.g.*, *West v. Dallas Police Dep't*, No. 3:95-cv-01347-P, 1997 U.S. Dist. LEXIS 23900, at *19 (N.D. Tex. July 31, 1997); *Glaspy v. Malicoat*, 134 F. Supp. 2d 890, 895 (W.D. Mich. 2001).

Members of the Plaintiff class, the Hopeful Community, many of them disabled and using walkers and wheelchairs, would be subject to threat of criminal prosecution for the "life-sustaining activities" and "innocent conduct" that is eliminating harmful wastes from one's body, where they would be forced to urinate and defecate outdoors if the port-a-potty at their location were removed. Persons forced to relieve themselves outside, due to the lack of access to a toilet, face the very real possibility of criminal prosecution. *See*, *e.g.*, *People v. McDonald*, 137 Cal. App. 4th 521, 539 (Cal. Ct. App. 2006) (the "act of urinating in public satisfies the statutory definition of 'public nuisance'" under Cal. Pen. Code §§ 370, 372); Cal. Pen. Code § 314 (misdemeanor indecent exposure); Cal. Pen. Code § 640(b)(8) (infraction urinating in any public transportation vehicle or facility). Specifically, the Sacramento City Code makes it "unlawful for any person to urinate or defecate in a public place other than a restroom, or in a place open to public view, or upon the private property of another without the consent of the owner or person in lawful possession." Sacramento City Code § 9.04.070.[2]

### B. IRREPARABLE HARM

To obtain injunctive relief, a plaintiff need only demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is appropriate "to prevent a substantial risk of serious injury from ripening into actual harm…" *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coalition of Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). Plaintiffs have shown the likelihood of future constitutional violations, namely deprivation of Fourteenth Amendment rights and being placed in a position of danger in violation of their substantive due process rights. *See*, *e.g.*, *Jeremiah v. Sutter County*, No. 2:18-cv-00522-TLN-KJN, 2018

---

[2] In 2013, California legislators considered a bill, known as the "Homeless Bill of Rights," which, among other things, would have required local governments to provide "sufficient" health and hygiene facilities, open 24 hours a day, seven days a week. *See* <https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201320140AB5>. Opposed by numerous local government entities, the bill died.

8

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**
*Mahoney v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

WL 1367541, 2018 U.S. Dist. LEXIS 43663, at *13 (E.D. Cal. Mar. 16, 2018).

## C.  BALANCE OF EQUITIES

A court weighing the balance of the equities "must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). At this stage of the inquiry, "balancing the injury of a third party against plaintiff's" is inappropriate. *L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

## D.  PUBLIC INTEREST

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). "[H]aving government officials act in accordance with law . . . invokes a public interest of the highest order." *Seattle Audubon Soc. v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991).

Additionally, courts have found there is a strong "pubic interest in maintaining the protection afforded by the constitution to those most in need of such protections." *Cobine v. City of Eureka*, No. 4:16-cv-02239-JSW, 2016 WL 1730084, 2016 U.S. Dist. LEXIS 58228, at *22 (N.D. Cal. May 2, 2016). "Clearly Plaintiffs, homeless individuals …, are persons who [are] 'most in need of such protections.'" *Jeremiah v. Sutter County*, No. 2:18-cv-00522-TLN-KJN, 2018 WL 1367541, 2018 U.S. Dist. LEXIS 43663, at *14 (E.D. Cal. Mar. 16, 2018).

## E.  BOND

The Rules requires that an applicant for a temporary restraining order provide security against the potential effects of a wrongly-issued injunction. *See* Fed. R. Civ. P. 65(c). "The Ninth Circuit has no steadfast rule as to the amount of a bond as a result of the issuance of a preliminary injunction." *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1059 (S.D. Cal. 2006). "The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (finding proper the district court's exercise of discretion in

9

allowing environmental group to proceed without posting a bond).

Here, the amount of the security bond required by the Court, if any, should be nominal so as not to "thwart citizen actions." *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). Further, no bond may be necessary, where no harm will result, if the Court is able to schedule a preliminary injunction hearing before the date that the City is scheduled to order the company to remove the porta-potty. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The bond amount may be zero if there is no evidence the party will suffer damages from the injunction."). Finally, "Plaintiffs are homeless individuals" and "to require bonds would place them in a further position of hardship." *Jeremiah v. Sutter County*, No. 2:18-cv-00522-TLN-KJN, 2018 WL 1367541, 2018 U.S. Dist. LEXIS 43663, at *14 (E.D. Cal. Mar. 16, 2018).

## IV.  CONCLUSION

For the reasons stated, the Court should issue an order to preserve the status quo and temporarily enjoin Defendants City of Sacramento, Sacramento Police Department, and Doe 1 to 50 from removing or ordering the removal of the port-a-potty located near their encampment of approximately thirty (30) homeless persons on North B Street in Sacramento, west of North 7th Street, until such time that a motion for preliminary injunction may be heard by the Court.

Dated: February 4, 2020

Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:      (916) 443-6911
Facsimile:        (916) 447-8336

Attorneys for Plaintiffs
PATRICK MAHONEY, CAROLINE
KENNEDY, SURACHA XIONG,
and BRANDON ALLEN, SR.

10

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**
*Mahoney v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____