SUSANA ALCALA WOOD, City Attorney (SBN 156366)
**SEAN D. RICHMOND, Senior Deputy City Attorney (SBN 210138)**
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA  95814-2608
Telephone:  (916) 808-5346
Facsimile:  (916) 808-7455

Attorneys for the Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MAHONEY; CAROLINE KENNEDY; SURACHA XIONG; and BRANDON ALLEN, SR., on behalf of themselves and a class of similarly situated persons,<br><br>                 Plaintiffs,<br><br>        vs.<br><br>CITY OF SACRAMENTO; SACRAMENTO POLICE DEPARTMENT; and DOES 1 to 50,<br><br>                 Defendants. | Case No.:  2:20-cv-00258-KJM-CKD<br><br>**DECLARATION OF JENNIFER JOHNSON IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFFS APPLICATION FOR TRO**<br><br>Date:          TBD<br>Time:         TBD<br>Location:    Robert T. Matsui US<br>                   Courthouse<br>                   501 I Street<br>                   Sacramento, CA 95814<br>Courtroom: TBD<br>Judge:        TBD |

I Jennifer Johnson, declare as follows:

1.     I am a supervising engineer with the City of Sacramento's Public Works Department. I have been with the City of Sacramento for just under 5 years. In my capacity as supervising engineer, I oversee the process for issuing encroachment permits and revocable permits for the placement of facilities in the public right of way.  The encroachment permit application is reviewed for technical design and compliance with city standards and codes as well as for traffic control during construction.  It is the permit issued to allow construction in

1

890192

1   the public right of way.  The revocable permit is issued to allow a private entity to place a

2   privately maintained improvement in the public right of way.  It is considered the permit that

3   allows "permission" to be in the public right of way.

4       2.    City Code section 12.12.020 makes it unlawful for a person to encroach in the public

5   right-of-way without first obtaining an encroachment permit and complying with the

6   requirements of that permit.

7       3.    Section 12.12.030 sets forth and is entitled "Application requirements." These

8   requirements include: the name and residence or business address of the applicant;

9   the location and approximate area of the encroachment; the purpose, a plan or drawing, and a

10   schedule for the proposed period of encroachment; a traffic control plan, if required, and any

11   additional information required by Article II of chapter 12.12 relating to excavations. Section

12   12.12.030 also requires the payment of a nonrefundable fee in an amount established by

13   resolution of the city council to defray the city's costs to process the application and provide for

14   site inspections. The fee may include costs incurred by the city to maintain an inventory or

15   database of facilities that are installed, repaired or removed. If the director determines the fee

16   to be inappropriate based on the amount of work to be done to process the application, to

17   inspect the work and to maintain said inventory or database, or for other good cause shown,

18   the director may waive the fee, in whole or in part.

19       4.    Section 12.12.040, addressing issuance of an encroachment permit provides in

20   pertinent part: upon receipt of a written application for an encroachment permit, the director

21   shall determine and set forth all requirements, approve or disapprove the application, and, if

22   approved, sign and return it to the applicant with a permit number; no permit is transferable;

23   each permit shall state a time period for commencement and completion of all the permitted

24   work. The director may grant extensions of time for good cause and may modify the permit if

25   circumstances or conditions appearing after commencement of the work is commenced make

26   it impossible to comply with the requirements of the permit.

27   / / /

28   / / /

DECLARATION OF JENNIFER JOHNSON IN SUPPORT OF DEFENDANTS OPPOSITION TO
PLAINTIFFS APPLICATION FOR TRO

890192

1    5.      Section 12.12.050 requires that the permittee comply with all current federal, state
2    and local safety regulations and all federal and state disability laws including those requiring an
3    accessible path of travel.

4    6.      Section 12.12.100 states that a condition for the issuance of the permit is that the
5    permittee shall hold harmless and indemnify the City from any liability arising from the
6    issuance of the permit.

7    7.      Section 12.12.110 requires that the permittee acquire insurance against any liability
8    arising from the use of the permit.

9    8.      The process for obtaining an encroachment permit would be for the applicant to
10   submit the encroachment permit application and the revocable permit application.   The
11   Department of Public Works would process both applications concurrently.  The revocable
12   permit application requires clearance letters to be signed off by any entity who has rights to the
13   area in question. For example, if the object to be placed in the right-of-way is to be located near
14   a SMUD pole or tree, both SMUD and the City's division of Urban Forestry would need to
15   sign off on a clearance letter.  Once all the approvals are in place on both applications, the
16   department of Public Works would then submit the application for final processing.   The
17   revocable permit would require the applicant to agree to the terms of the permit which includes
18   (among other provisions) providing maintenance of the improvement, carrying liability
19   insurance, and removing the improvement within 5 days if the city revokes the permit.  The
20   entire list of provisions is listed in resolution 81-845 (attached as Exhibit "A" to this declaration)
21   which is also included as part of the application package.

22   9.      The aforementioned City Code sections have been in effect for decades and most
23   recently amended to its present form in 2009.  Attached as Exhibit "B" to this declaration is a
24   true and correct copy of the encroachment permit ordinances adopted by the Sacramento City
25   Council on April 30, 2009.

26   / / /
27   / / /
28   / / /

3

DECLARATION OF JENNIFER JOHNSON IN SUPPORT OF DEFENDANTS OPPOSITION TO
PLAINTIFFS APPLICATION FOR TRO

890192

1    I declare under penalty of perjury according to the laws of the State of California that the

2    foregoing is true and correct.

3        Executed on February 5, 2020 in Sacramento, California.

4

5                                    /s/ JENNIFER JOHNSON
                                  **JENNIFER JOHNSON**
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JENNIFER JOHNSON IN SUPPORT OF DEFENDANTS OPPOSITION TO
PLAINTIFFS APPLICATION FOR TRO

890192

# EXHIBIT A



*City of*
## SACRAMENTO
Department of Public Works

Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

Phone: 916-808-8300
Fax: 916-808-1984

| eCAPS #<br>P15 | **MINOR ENCROACHMENT<br>PERMIT APPLICATION<br>CONSTRUCTION** | Permit #<br>ENC |
|---|---|---|

**OWNER**

| NAME / POINT OF CONTACT | PHONE | EMAIL | |
|---|---|---|---|
| BUSINESS NAME | | | JOB NO. / WORK ORDER NO. |
| MAILING STREET ADDRESS | | CITY | STATE | ZIP |

**CONTRACTOR**

| BUSINESS NAME | | LICENSE NO. | |
|---|---|---|---|
| MAILING STREET ADDRESS | | CITY | STATE | ZIP |
| CONTRACTOR POINT OF CONTACT | PHONE | EMAIL | |

**SITE**

| SITE ADDRESS | START DATE | DURATION (DAYS) | COMPLETION DATE |
|---|---|---|---|

| PRIMARY STREET (IF NOT TIED TO AN ADDRESS)<br>_____ | ☐ INTERSECTION OF<br>☐ BETWEEN<br>☐ BOUND BY | ST. 1: _____<br>ST. 2: _____<br>ST. 3: _____<br>ST. 4: _____ |
|---|---|---|

PROJECT DESCRIPTION
_____

**SCOPE OF WORK**

REVOCABLE PERMIT REQUIRED FOR THESE ELEMENTS:

☐ BENCH  ☐ BIKE RACK  ☐ MONITORING WELL  ☐ SIDEWALK CAFÉ  ☐ SIGN  ☐ SIGN TOPPER  ☐ TRASH CAN
☐ OTHER: _____

| ☐ SIDEWALK / DRIVEWAY | WIDTH (ft) | LENGTH (ft) | | DEPTH (in) | | MATERIAL (concrete/asphalt) | |
|---|---|---|---|---|---|---|---|

☐ CITY OR COUNTY CONNECTIONS / TAPS

INCLUDE BOTH AGENCY AND FACILITY IN DESCRIPTION. FOR EXAMPLE: 'CITY WATER' OR 'SASD SEWER'.

| DESCRIPTION | DIAMETER (in) | LENGTH (ft) | MATERIAL | TAP TYPE | INSTALL METHOD |
|---|---|---|---|---|---|
| DESCRIPTION | DIAMETER (in) | LENGTH (ft) | MATERIAL | TAP TYPE | INSTALL METHOD |
| DESCRIPTION | DIAMETER (in) | LENGTH (ft) | MATERIAL | TAP TYPE | INSTALL METHOD |

☐ NON-CITY UTILITY

| PURVEYOR | WORK TO BE PERFORMED | | | |
|---|---|---|---|---|
| | ☐ ABOVE GROUND   ☐ BELOW GROUND   ☐ BOTH | | | |
| ☐ UNDERGROUND LINE | LINE TYPE | DIA (in) | LENGTH (ft) | MATERIAL | INSTALL METHOD |
| ☐ UNDERGROUND STRUCTURE | TYPE (MH/PB,ETC) | DESCRIPTION | | | |
| ☐ SURFACE | ☐ STRUCTURE<br>☐ LINES | DESCRIPTION | | | |

Minor Encroachment-Construction Permit | **ENC** [          ]

| | | WIDTH | LENGTH | | | DEPTH |
|---|---|---|---|---|---|---|
| **S C O P E** **O F** **W O R K** | ☐ ROADWAY TRENCHING | | | | | |
| | ☐ NEW COMM LINES | NAME | ☐ EXIST PRIVATE CONDUIT<br>☐ EXIST CITY CONDUIT<br>☐ NEW PRIVATE CONDUIT<br>☐ AERIAL | | INSTALL METHOD | |
| | ☐ SMALL CELL SITE | NAME | CITY POLE No. | | PRIVATE POLE OWNER | ADDITIONAL INFO |
| | ☐ BANNERS | APPLICANT | TOTAL NO. | DATE RANGE | | ☐ MAP INCLUDED<br>☐ REV PERMIT REQ. |
| | ☐ OTHER | TYPE | DESCRIPTION | | | |

## RELATED BUILDING / PW PERMITS: _____

## OWNER'S SIGNATURE: _____   DATE: _____

By signing this application, Owner agrees to comply with the requirements of Sacramento City Code Chapter 12.12. The Code can be found at: http://www.qcode.us/codes/sacramento/.

**Final Processing:**

1. Owner and Contractor will be notified by email or phone call when permit has been approved.
2. Approved permits will remain active a maximum of 60 calendar days from approval date or until the Estimated Start Date listed, whichever occurs first.
3. Contractor is required to contact the Construction Inspection Help Desk at 916-808-6810 a minimum of 1 week prior to the requested start date of work to schedule a preconstruction meeting.
4. If Contractor has not called the Construction Inspection Help Desk as required by #2 and #3 above, the permit status will change to EXPIRED.
5. The Owner or Contractor may request the City to delay the start date of the project, request an extension of the project duration, or make other modifications to the application by submitting the request in writing by sending an email to Encroachments@cityofsacramento.org.  Please include the project address and ENC # in the Subject Line of the email.

**STAFF USE ONLY**

| PERMIT DEPOSIT<br>$ | CITY APPROVER | RECEIVED DATE | APPROVED DATE |
|---|---|---|---|
| | | | |

| | | |
|---|---|---|
| **A D D I T I O N A L** **I N F O** | ☐ CERTIFICATE OF INSURANCE | ☐ GENERAL LIABILITY - $500K COMBINED SINGLE LIMIT<br>☐ STANDARD ACCORD FORM ON COMPANY LETTERHEAD<br>☐ SIGNED BY AGENT<br>☐ CITY OF SACRAMENTO LISTED AS CERTIFICATE HOLDER<br>☐ CITY OF SACRAMENTO, ITS OFFICIALS, AGENTS, EMPLOYEES & VOLUNTEERS LISTED AS ADDITIONAL INSURED<br>☐ ADDITIONAL INSURED ENDORSEMENT<br>☐ A.M. BEST GUIDE RATING OF A-VII OR BETTER<br>☐ ISSUE DATE, POLICY'S EFFECTIVE DATE, EXPIRATION DATE LISTED |
| | ☐ OTHER AGENCY PROJECT | AGENCY NAME |
| | | RECORD DRAWING / AS-BUILT REQUIRED<br>☐ YES   ☐ NO |
| | ☐ BOND REQUIRED | CONSTRUCTION COST |
| | | BOND AMOUNT |
| | ☐ REVOCABLE PERMIT REQUIRED | REV PERMIT NUMBER |
| | | DATE APPROVED |



*City of*
# SACRAMENTO
## Department of Public Works
### Engineering Services Division

Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

**Phone:** 916-808-8300
Fax: 916-808-1984

## REVOCABLE PERMIT APPLICATION
## PROCESSING INSTRUCTIONS

### Preparation of Application Package

1. Type or neatly print all information in blanks on attached REVOCABLE PERMIT APPLICATION FORM.
2. List all active building permits on attached BUILDING PERMIT IDENTIFICATION FORM.
3. Provide description of the encroachment area. (This is not required to be prepared by Professional Land Surveyor). See attached form.
4. Prepare a site plan that is neat, readable, fully dimensioned and inclusive of all site conditions (see attached example for requirements).
5. Identify the agencies requiring clearance letters by using attached REVOCABLE PERMIT CLEARANCE MATRIX. Fill in applicant section on REVOCABLE PERMIT CLEARANCE LETTER and forward the letter and one copy of the scaled drawing to the City department and/or other agency identified on the REVOCABLE PERMIT CLEARANCE MATRIX. Clearance Letters for discipline on the REVOCABLE PERMIT CLEARANCE MATRIX may obtain for the applicant by Development Engineering staff for a nonrefundable service fee of $140. This service by DE is optional at DE staffs' discretion. When review is complete, collect all REVOCABLE PERMIT CLEARANCE LETTER responses and resolve all problems or issues with the City department and/or other agency prior to submitting the application package.
6. Provide proof of liability insurance as directed by attached REQUIREMENTS FOR CERTIFICATES OF INSURANCE. Provide certificate of insurance and endorsement from owner with the City of Sacramento listed as certificate holder and as additional insured. List project address. For more information contact the City of Sacramento Risk Management Office at (916) 808-5556.
7. APPLICABLE ONLY TO 'OUTDOOR SEATING AND DINING REQUEST." Sewer Impact Fee Ordinance (SRCSD-0106) http://www.srcsd.com/ordinaces.php#fee-ord Applicant shall contact the Sacramento Regional County Sanitation District (SRCSD) for a calculation of Sewer Impact Fees due. Proof of payment shall be included with the Revocable Permit Application Package Submittal. (Applicant is recommended to obtain all approved clearance letters prior to payment of Sewer Impact Fees.) SRCSD Contact Info: SRCSD Permit Services Unit, 10060 Geothe Rd., Sacramento, CA 95827 Phone: (916) 876-6100  Fax: (916) 854-8863.

### Submission to the City

After the applicant has completed the above items, the following shall be submitted to Development Engineering, 300 Richards Blvd., 3rd Floor:

- [ ] **Completed "Revocable Permit Application Form"**
- [ ] **SIGNED clearance letters (Approved)**
- [ ] **Description of the Encroachment Area (See attached form)**
- [ ] **8 1/2" x 11" site plan - 3 copies**
- [ ] **Proof of insurance (ACCORD & ADDITIONAL INSURED ENDORSEMENT)**
- [ ] **Application Fee:**     > $300 for staff issued permits, or
                          > $600 for permits requiring City Council approval
- [ ] **List of active building permits for this location (see attached "BUILDING PERMIT IDENTIFICATION FORM"**

\*\*\*Work may begin only AFTER the City has issued the building or excavation/encroachment permit\*\*\*

---

**INCOMPLETE APPLICATIONS WILL NOT BE ACCEPTED
AND WILL BE RETURNED TO THE APPLICANT**

---

11-18



*City of*
# SACRAMENTO
Department of Public Works

Engineering Services Division

Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

**Phone:** 916-808-8300
Fax: 916-808-1984

| **PERMIT #** |
| --- |

## REVOCABLE PERMIT APPLICATION AND PERMIT FORM

**PROPERTY LOCATED AT:** _____

Name of property owner: _____

Address: _____ Zip: _____

Email: _____

**It is hereby requested that revocable permit be granted to:**

Name of Recorded Owner: _____ Phone: _____

Address: _____ City _____ State: _____ Zip: _____

Purpose of Permit

☐ Monitoring Well (Qty ___)    ☐ Bus Shelter    ☐ Bicycle Rack
☐ Other (Describe in detail)

In the event the permit for which application is made is granted, it shall be subject to conditions including but not limited to the general conditions set forth in resolution 81-845 adopted by the City Council on November 17, 1981. The undersigned agrees to comply with all such conditions imposed on the permit. (MUST BE SIGNED BY OWNER)

_____        _____
Owner's Signature                       Date
                                        *Please do not write below this line*

**GRANT OF PERMIT**
This permit is granted subject to attached "General Provisions – Revocable Encroachment Permit," which were adopted by the City Council in Resolution No. 81-845, date November 17, 1981, and the hereinafter specified special conditions. This permit shall be effective only after the applicant files with the Risk Management Division of the City of Sacramento, the insurance certificates required by the General Provisions, unless specifically excepted in the special conditions.

For Bus Shelters Only: (check if applicable)

☐ Reference is made to Revocable Encroachment Permit, City Council Resolution No.86-862, dated November 12, 1986

☐ Reference is made to City Managers Agreement No.95-073, dated March 17, 1995, Agreement for providing Electrical Service to Bus Shelters.

Special Conditions                              See attachment for additional conditions

**PERMIT ISSUED BY:** _____  **DATE:**_____
                        (Public Works Engineer)

11-18

### Site Plan Requirements (Revocable):

Approved By:

Name: _____ Signature: _____

Department: _____ Date: _____

- Approval Signature block
- Provide description of material of the structure encroaching within the public right-of-way
- North Arrow
- Dimension (dim.) of work
- Street Name (nearest cross street)
- Show Project Site (indicate address)
- Show features that might be impacted by construction activities, such as operation of equipment, utility installation, material storage, excavation, etc.  Show distance from the work site:
  - ➢ Fire Hydrant
  - ➢ Gates/Fences
  - ➢ Driveway Location/ramps/curb&gutter/sidewalk/planter
  - ➢ Utility Pole
  - ➢ Street Light
  - ➢ Parking Meters
  - ➢ Street Trees (indicate if to be pruned or removed)
  - ➢ Other structures that may affect the proposed work



PROJECT SITE
(write site address)

PROPOSED ENCROACHMENT
(Write brief description. This example is an awning/canopy encroaching in the sidewalk)

STREET NAME

SIDEWALK or SIDEWALK AND PLANTER

STREET NAME

N



*City of*
SACRAMENTO
Department of Public Works

Engineering Services Division

Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

**Phone**: 916-808-8300
Fax: 916-808-1984

# DESCRIPTION OF THE ENCROACHMENT AREA

BEGINNING AT THE CENTERLINE INTERSECTION OF
_____ AND
_____; THENCE FROM SAID POINT OF
BEGINNING ALONG THE CENTERLINE OF _____ IN A
    (NORTHERLY)    (SOUTHERLY)    (WESTERLY)    (EASTERLY)
DIRECTION _____ FEET; THENCE IN A    (NORTHERLY)    (SOUTHERLY)
(WESTERLY)    (EASTERLY) DIRECTION 90 DEGREES TO _____ FEET TO
THE:
_____
_____

TYPE OF PROJECT:
(CHECK ONE)

☐   PROPOSED MONITORING WELL

☐   _____CORNER OF PROPOSED _____BY _____ FOOT BUS SHELTER

☐  OTHER: _____

06-2018
11-18



Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

**Phone:** 916-808-8300
Fax: 916-808-1984

## <u>REVOCABLE PERMIT CLEARANCE LETTER</u>

Respondent should complete this form with comments regarding the present and future effects of this encroachment on their facilities and operations.

Note: Discuss all problems and solutions directly with the applicant.

When completed, return this letter to the **APPLICANT.**

APPLICANT SECTION:

Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Daytime Phone: _____ Fax: _____

Permit Location: _____

Description of revocable permit item: _____

_____

RESPONDENT SECTION:

To: Development Engineering

From: _____ Date: _____

Department /Agency: _____

The revocable permit described above has been requested. My comments and recommendations regarding the effects of this encroachment on our operations and facilities, present and future are below.

Comments:

_____

_____

_____

_____

_____

By: _____ Date: _____

06-2018

11-18

REVOCABLE PERMIT CLEARANCE LIST

After filling out APPLICANT section of the "REVOCABLE PERMIT CLEANCE LETTER" hand carry or mail one copy of the letter and one copy of the scaled drawing of the encroachment to the departments / agencies as indicated by the Development Engineering.

Submit signed clearance letters at the same time as the application for a revocable permit.

## CITY DEPARTMENTS

☐ **Building Division**
300 Richards Blvd, 3rd Floor
Sacramento, CA 95811
(916) 808-5656

☐ **Fire Department**
Attn: King Tunson
300 Richards Blvd,
Sacramento, CA 95811
(916) 808-1358
ktunson@sfd.cityofsacramento.org

☐ **Planning Division**
300 Richards Blvd, 3rd Floor
Sacramento, CA 95811
(916) 808-5656

☐ **Engineering Services,**
**Project Development and Electrical Section**
Attn: Philip Vulliet
915 I Street, 2nd Floor, New City Hall
Sacramento, CA 95814
(916) 808-5092
PVulliet@cityofsacramento.org

☐ **Dept. of Public Works**
**On Street Parking**
300 Richards Blvd., Suite 200
Sacramento, CA 95811
Attn: Matt Eierman
(916) 808-5354
MEierman@cityofsacramento.org

☐ **Street Services-Dept. of Public Works**
Attn: Greg Smith
5730 24th Street, Building 1
Sacramento, CA 95822
(916) 808-8364
GSmith@cityofsacramento.org

☐ **Traffic Engineering**
**Dept. of Public Works**
915 I street, 2nd Floor
Sacramento, CA 95814

☐ **Department of Utilities**
Attn: Edgar Bazan
300 Richards Blvd, 2nd Floor
Sacramento, CA 95811
(916) 808-6847
EBazan@cityofsacramento.org
AAngulo@cityofsacramento.org
MWright@cityofsacramento.org

☐ **Design Review**
Attn: Bruce Monighan
300 Richards Blvd, 3rd Floor
Sacramento, CA 95811
(916) 808-1241
bmonighan@cityofsacramento.org

## OTHER AGENCIES

☐ **CalTrans, District 3**
District Permit Engineering
P.O. Box 911
Marysville, CA 95901

☐ **P.G.&E.**
343 Sacramento Street
Auburn, CA 95603
Attn: Piper J. Wagner
(530) 889-5089
pjwf@pge.com

☐ **S.M.U.D.**
P.O. Box 15830 MS B304
Sacramento, CA 95852
(916) 732-6868
realestate@smud.org

☐ **Comcast**
Attn: Steve Abelia
1242 National Dr
Sacramento, CA 95834
(916) 830-6757
steve_abelia@cable.comcast.com

☐ **SBC (Pacific Bell)**
Attn: Astrid Willard
2700 Watt Ave, Rm. 3473-11
Sacramento, CA 95851
Phone: (916) 484-2388
ae6863@att.com

☐ **Sacramento Regional Transit**
Attn: Sharon Fultz
P.O. Box 2110
Sacramento, CA 95812-2110
Phone: (916) 556-0308
SFULTZ@sacrt.com  Phone:

☐ **County of Sacramento, Public Works**
**Water Quality Division**
Attn: Robert Espinosa
10060 Goethe Rd.
Sacramento, CA 95827
Phone: (916) 876-6386
SASDPlanCheck@sacsewer.com

☐ **Other**
_____
_____
_____

06-2018

11-18

**CITY OF SACRAMENTO**
DEPARTMENT OF PUBLIC WORKS
ENGINEERING SERVICES DIVISION
DEVELOPMENT ENGINEERING
300 RICHARDS BLVD., 3RD FL. .  SACRAMENTO, CA 95811-0218 .  PH: (916) 808-8300 .  FAX: (916) 808-1984

## REQUIRED CLEARANCE AGENCIES FOR COMMON REVOCABLE ENCROACHMENT PERMITS
### IF THE REVOCABLE ITEM IS NOT LISTED BELOW, CONTACT DEVELOPMENT ENGINEERING FOR REQUIRED CLEARANCE AGENCIES

Clearance letters from additional agencies may be required depending on site conditions.

| Revocable Item | Expedited Review | Building Division, Community Development Dept. | Planning Division, Community Development Dept. | Design Review, Community Development Dept. | Fire Marshall | Electrical Design, Dept. of Public Works | Construction Inspection, Dept. of Public Works | Street Maintenance, Dept. of Public Works | Department of Utilities | Notify Office of City Council Member | Property Business Improvement District | Development Engineering, Dept. of Public Works | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATM | | x | x | | | | | | | | | x | |
| Antenna, Building Mounted | | x | x | x | | | | | | | | x | Design Review if in Design Review District |
| Art, Building Mounted | | x | x | x | | | | | x | | | x | Design Review if in Design Review District |
| Art, Free Standing | | | x | x | | | | | x | | | x | Design Review if in Design Review District |
| Awning/Canopy | x | x | x | | x | | | | | | | x | |
| Banner, Pole Mounted | | | | x | | x | | x | x | x | | x | Norm Colby- Street Maintenance, DOT.  Sompol Chatusripitak- Electrical Design, DOT.  Non-profit orgs only. |
| Banner, Building Mounted | | x | x | x | | | | | | | | x | Design Review if in Design Review District. |
| Bench | | | | x | | | | | | | | x | Design Review if in Design Review District |
| Bicycle Rack | x | | | x | | | | | | | | x | Design Review if in Design Review District |
| Bollard | | | | | x | | | | | | | x | |
| Bus Shelter | | | | | | | x | | | | | x | |
| Light Fixture | x | x | x | x | x | | | | | | | x | Design Review if in Design Review District |
| Pipe, Private Water & Sewer | | x | | | | | | x | | | | x | |
| Planter | | | | x | | | | | | | | x | No Clearance Letters Necessary |
| Sidewalk, Decorative | | | | x | | | | | | | | x | Brick, Stone Paving, Exposed Aggregate, etc.  Design Review if in DR District |
| Sidewalk Café/Seating | | x | x | x | x | | | | | | | x | District |
| Sign, Structure Mounted | x | | | | x | | | | | | | x | Provide Sign Permit Applicaion # at submittal. |
| Well, Monitoring | x | | | | | | | | | | | x | No Clearance Letters Necessary. See application for requirements. |

**General Notes:**

Clearance Letters do not constitute a full review or approval and does not guarantee permit issuance.  Revocable Encroachment Permit Application Package must be processed and reviewed by Development Engineering prior to permit issuance.  Clearance Letter response or approval can be obtained for the applicant by Development Engineering staff for a non-refundable service fee of $140.

06-2018

11-18



*City of*
**SACRAMENTO**
Department of Public Works

Engineering Services Division

Development Engineering
300 Richards Blvd., 3rd Floor
Sacramento, CA 95811

**Phone**: 916-808-8300
Fax: 916-808-1984

# BUILDING PERMIT IDENTIFICATION FORM

Applicant:

List all active building permits associated with this address and return this sheet with the permit application:

**Development Engineering Counter Person:**

**The following building permits are associated with this permit application. Route this application to the plan checker listed in the commercial database.**

_____

**Address**

**Building Permit #** _____

**Building Permit #** _____

**Building Permit #** _____

**Building Permit #** _____

**Building Permit #** _____

**Building Permit #** _____

11-18

# APPLICANTS COPY OF GENERAL CONDITIONS

All work is subject to the requirements of Sections 12.12.010 through 12.12.170 of the City Code of the City.  Particular attention is directed to the following:

PERMIT – REQUIRED.  It shall be unlawful for any person to make or cause to be made any excavation in or under the surface of any public street, alley, sidewalk or any other public place for the installation, repair or removal of any pipe, conduit, duct, tunnel, power pole, or for any other purpose without first obtaining from the city engineer an excavation permit in compliance with this article.

REQUIREMENTS.  Before issuing an excavating permit, the city engineer shall require:

(a)  A written application for such permit, upon a form to be furnished by the city engineer, to be made and filed with the city engineer, wherein the applicant shall set forth the following.

1.  the name and residence or business address of the person making such application;

2.  the location and approximate area of the excavation; and,

3.  the purpose of the excavation.

The applicant shall attach to the application form a plan showing the location of the proposed excavation, the dimensions thereof, and such other details as the city engineer may require to be shown upon such plan.

At the time the permit is issued, a nonrefundable fee in an amount established by resolution of the city council shall be paid, provided, however, that in any case where the city engineer determines the fee to be inappropriate based on the amount of work to be done to process the application, or for other good cause shown, the city engineer may waive the fee, in whole or part.  No fees shall be charged for excavation permits for power poles.

Notwithstanding the foregoing, laterally authorized utilities for service connections or for the location of trouble in conduits or pipes shall be according to the paragraph below titled "Blanket Permits".

ISSUANCE.  (a)  Upon receiving a written application for an excavation permit and a plan, the city engineer shall set forth all requirements, approve or disapprove the application, sign and return it to the applicant.  Excepting only excavations described below as Emergency Excavations or authorized under Blanket Permits, one (1) day prior to start of the work, the applicant shall telephone the division and request a permit number, informing the City the date the work will commence.  A permit number shall then be assigned to the job and a permit shall be sent to the applicant.

(b)  No permit shall be transferable and shall be void unless the excavation to be made pursuant thereto is commenced within ten (10) days from the date of its issuance and the work diligently completed.

(c)  Each permit shall state a time when all the work to be done thereunder shall be completed.  The city engineer may grant extensions of time, provided satisfactory reasons thereof are presented by the applicant.

COMPLIANCE WITH SAFETY REGULATIONS.  The applicant shall be responsible to comply with all current federal and state safety regulations.

EXCAVATIONS NOT IN ACCORDANCE WITH PERMIT DECLARED UNLAWFUL.

(a)  It shall be unlawful for any person to make, cause or permit to be made, any excavation, or to install, cause or permit to be installed any tank, pipe, conduit, duct, tunnel, power pole, or other utility or appliance in or under the surface of any public street, alley, sidewalk or other public place, at any location, other than that described in the application for the excavation permit and as shown on the plans filed with the city engineer by such persons, and in accordance with the requirements of the permit.  If the circumstance appearing after the excavation is commenced make it impossible to comply with the permit, the city engineer may grant a waiver to take such circumstances into account.

(b)  Failure to comply with requirements set forth by the city engineer on any permit shall be cause for revocation of said permit until such time as violations have been corrected or substitutes have been approved by the city engineer.

OPENING AND BACKFILLING TRENCHES.  (a)  No trench shall be opened in any street for the purpose of laying pipes, conduits or ducts more than four hundred (400) feet in advance of the pipe, conduit or ducts being placed in the trench, except in the case of emergency, and only after the consent of the city engineer has been obtained.

(b)  All trenches shall be backfilled to meet city standards for compaction, and the old torn up pavements and other rubble shall be removed, together with any surplus excavated material, within three (3) working days from the time such material is placed upon the street.  After backfilling is completed, and prior to repaving the cut, the contractor or permittee shall remove all loose paving material and trim the edges of the excavation at the street surface to the satisfaction of the engineer.

(c)  Whenever any caving occurs in the sidewalls of any excavation, the pavement above such caving shall be cut away.  In no case shall any void under a pavement be filled by any side or lateral tamping.

CLEARING UP STREETS.  In every case and at all times, the work of removing from the streets all obstructions, surplus materials, debris and waste matter of every description caused by and accumulated from the excavation shall be the responsibility of the permittee.

REPAIR OF SUNKEN PAVEMENT OVER EXCAVATION.  In case the pavement or the surface of the street over any excavation should become depressed or broken at any time within two (2) years after the work has been completed, natural wear of the surface expected, the person who made the excavation shall upon written

notice from the city engineer, immediately proceed to inspect the depressed or broken area to ascertain the cause of the failure.  The contractor or permittee shall make repairs to the installation or backfill and have the pavement restored as specified by the city engineer.  In case such pavement is not completely restored within ten (10) days after such notice has been given, and unless delayed by a strike or condition beyond control, the city engineer shall then cause the work to be done at the expense of the delinquent person after giving such person twenty-four (24) hours final notice.  In such case, the city shall be responsible for any future repairs of that portion of such street repaired by city forces.

FAILURE TO COMPLETE WORK WITHIN SPECIFIED TIME.  In case any part of the work referred to in this article is not completed within the time required except by reason of legal holidays or delays caused by strikes, or unless the city engineer shall notify in writing the person doing the work to complete the same within forty-eight (48) hours after such notice has been mailed or served, the city engineer shall have full power to do such work, or may contract for the performance of such work as will restore the work area to a safe and passable condition until such time as the work can be completed.  The cost thereof shall be assessed against the delinquent person or permittee.

EXCAVATIONS, ETC., TO BE UNDER SUPERVISION OF THE CITY ENGINEER.  Any person engaged in making or backfilling any excavation in any public street, alley, sidewalk or other public place, shall at all times while such work is in progress keep at the job locations, the original permit or a copy thereof, and must, on demand, exhibit the same to the city engineer, his authorized representative or any police officer.  Such person shall also maintain at such job location, a sign, barricade, or other device bearing his name.

EMERGENCY EXCAVATIONS.  Nothing in this article shall be construed to prevent any person maintaining any pipe, conduit, or duct in or under any street, alley sidewalk, or other public place by virtue of any law, ordinance or permit, from making such excavation as may be necessary for the preservation of life or property when the necessity arises, provided that the person making such excavation shall notify the city street maintenance division within one (1) day after the offices of the city are first opened subsequent to such excavation.

BLANKET PERMITS.  The city engineer may issue blanket permits for any utility to make excavations for service connections, for the location of trouble in conduits or pipes, for making repairs thereto, or for emergency purposes.  Blanket permits shall be issued on a yearly basis only, and will authorize excavation only as stated above.  Blanket permits shall not be issued for new installations or facilities.

LIABILITY OF CITY.  Neither the City nor any officer or employee thereof shall be held responsible for any damages caused by any excavations made in any street, alley, sidewalk or other public place made by any person under the authority of a permit issued pursuant to the provisions of this article.  The person acting pursuant to such permit shall be solely liable for any damage or loss occasioned by any act or neglect in respect to such excavation.

ADDITIONAL REQUIREMENTS FOR CABLE TV FRANCHISEE, PRIVATE PARTIES AND NON-PUBLIC UTILITIES.  (a)  Cable TV franchisee shall construct facilities in accordance with the Cable System Construction Guidelines which have been approved by the Cable TV Commission and shall be responsible for pavement restoration unless otherwise specified in the permit.

(b)  Authorized installations shall, upon demand of the Director of Public Works, be immediately relocated or lowered to avoid potential conflicts.  All expenses incurred in relocating, lowering lines, potholing or marking of facilities to determine their exact location after the original installation shall be paid for by the permittee.  In case any part of the work referred to in this article is not completed within a time acceptable to the City, the Director of Public Works shall have full power to do such work or may contract for the performance of such work and the cost thereof shall be assessed against the permittee.

(c)  Upon completion of underground or surface work and at the discretion of the Director of Public Works, permittee shall furnish as built plans of the installation showing a correct plan view to scale, details and profile showing the locations of all elements based on data obtained in the field during construction.

(d)  Permittee shall take out, pay for and maintain during the period in which this permit is in effect, a policy of public liability and property damage insurance protecting himself, his agents and employees against the liability or injury or death sustained or suffered by the public or damage to the property of the public by reason of the work carried on under this permit or the encroachment maintained hereunder.  Public liability insurance shall be for the limits of at least $300,000 for the injuries to one and $500,00 for injury to more than one person and property damage limits shall be for the sum of $100,000.  The insurance shall be placed with a company satisfactory to the Risk Management Division, prior to the date that work under this permit is commenced.  Said policy or policies of insurance shall name the grantor, its officers and employees as additional named insureds and shall contain an endorsement precluding cancellation or reduction in coverage without giving the Risk Management Division at least ten (10) days' notice prior thereto.

(e)  If required on the face thereof, the permit shall not be effective for any purpose unless and until the permittee files with the Risk Management Division or granted a corporate surety bond in the amount specified on the face thereof, said bond to fully assure the performance by permittee of all obligations imposed upon permittee under the provisions of the permit.

---

1.  Unless otherwise indicated, working hours are 8:30 a.m. to 4:00 p.m. Mon. – Fri.

2.  All work shall conform to the standard specifications for public works construction unless otherwise noted.

11-18

# RESOLUTION NO. 81-845

ADOPTED BY THE SACRAMENTO CITY COUNCIL ON DATE OF

## NOV 1 7 1981

RESOLUTION AMENDING PARAGRAPHS 21 AND 22 OF
RESOLUTION NO. 77-611, RESOLUTION APPROVING
GENERAL PROVISIONS FOR REVOCABLE ENCROACHMENT PERMITS

BE IT RESOLVED BY THE COUNCIL OF THE CITY OF SACRAMENTO:

That except as otherwise provided in the special provisions thereof, all revocable encroachment permits hereafter issued by the City Council pursuant to Article IV of Chapter 12 of the Sacramento City Code shall be subject to the following General Provisions:

GENERAL PROVISIONS - REVOCABLE ENCROACHMENT PERMIT

1. <u>Authority and Definitions</u>.  This permit is issued under Article IV of Chapter 12 of the Sacramento City Code.  The term "city property" means any real property in which the City has a possessory interest except a street.  The term "street" as used herein includes all or any part and the entire width or right-of-way of a city street or alley whether or not such entire area is actually used for street or alley purposes.  The term "street" also includes any utility easement or right-of-way held or owned by the City.  The term "encroachment" as used herein includes any tower, pole, poleline, pipe, pipeline, fence, billboard, stand or building, tree, shrub, plant, crop or vegetation, or landscaping material or any structure or object of any kind or character not particularly mentioned herein which is placed in, under or over any portion of the street or city property.

The term "grantor" shall mean the City of Sacramento, its successors and assigns.  The term "permittee" shall include the person to whom this permit is issued and his successors and assigns and the provisions of this permit shall be binding upon said successors and assigns.

The term "work" shall mean the construction, placement, installation or planting of an encroachment on city property or within any street.

2. <u>Revocable</u>.  The permit is granted solely for the purpose specified in the permit, and any other use without the prior written consent of the City Engineer shall cause the permit to be revoked.  Except as otherwise provided for public agencies, this permit may be revoked with or without cause at any time by the City Engineer giving five (5) days written notice to permittee.  The notice shall be mailed to the permittee at the address given herein and no other form of giving or serving notice shall be required to effectuate a revocation of this permit.  Permittee agrees that grantor shall not be liable for any damages or consequential loss whatsoever which may result from revoking the permit.

3. <u>Acceptance of Provisions</u>.  This permit shall not be effective until the provisions of this permit are accepted in writing by the permittee; provided, however, accomplishing any work under this permit without written acceptance of its provisions shall constitute an acceptance of its provisions.

**RESOLUTION No.** 81-845
NOV 1 7 1981                    11-18

4. <u>No Precedent Established</u>.  This permit is granted with the understanding that this action is not to be construed to establish any precedent on the question of preference or expediency of permitting any certain kind of encroachment to be constructed or located within the right-of-way of any City street or on any City property.

5. <u>Notice Prior to Starting</u>.  Before starting work, the permittee shall notify the City Engineer or his designated representative of the date work is to commence.  Such notice shall be given at least three (3) working days in advance of the date work is to begin.  Unless otherwise specified, all work shall be performed on weekdays and during normal working hours of the grantor's inspector.

6. <u>Permits for Other Agencies</u>.  Permittee shall, whenever the same is required by law, secure any required written order or consent to any work hereunder from the Public Utilities Commission of the State of California, Caltrans or any other public agency having jurisdiction, and this permit shall be suspended in operation unless and until such order or consent is obtained.

If the work involves trenching to a depth in excess of sixty (60) inches, the permittee shall secure a trenching permit from the Division of Industrial Safety (2422 Arden Way, Telephone 445-5818) prior to commencing any excavation.  A copy of the trenching permit shall be available at the construction site.  Permittee shall comply with all terms and conditions of the trenching permit and the laws, rules and regulations applicable thereto.

7. <u>Permit Presentation</u>.  The permits for encroachments on streets are required to be at the site of the work and must be shown to any representative of the grantor or any law enforcement officer on demand.  The permit for encroachments on City property may be kept elsewhere than at the site, but the permit must be shown to any representative of the grantor or any law enforcement officer on demand.

8. <u>Protection of Traffic and Utilities</u>.  Permittee shall determine the location of and protect and support all utilities in the public rights-of-way and shall bear the entire cost of any damage to utilities or any relocation or reconstruction made necessary by the work.  Adequate provision shall be made for the protection of the traveling public.  If the nature of the work is such that any barricades, lights or flagmen are necessary, permittee shall furnish the same at his sole cost and expense before starting work.

9. <u>Minimum Interference with Traffic</u>.  All work shall be planned and carried out so that there will be the least possible inconvenience to the traveling public.

10. <u>Storage of Material</u>.  No material shall be stored within the traveled right-of-way.  No supplies or equipment shall be stored on other portions of the right-of-way until permittee is ready to start work.

11. <u>Clean Up Right-of-Way and City Property</u>.  Upon completion of the work, all construction materials and supplies, spilled concrete or oils, weedy plant growth, scraps, refuse and garbage shall be entirely removed and the right-of-way and City property left in as presentable condition as before work started.

12. <u>Standards of Construction</u>.  All work shall conform to recognized standards of construction.

**RESOLUTION No. 81-845**

NOV 1 7 1981

13.  Supervision of Grantor.  All the work shall be done subject to the
supervision of, and to the satisfaction of, the City Engineer or his duly authorized
representatives.  Work undertaken by the permittee shall not deviate from that shown
on the plan or plans submitted by permittee in connection with the filing of the
application for this permit without the prior written consent of the City Engineer.
The City Engineer or his representative may order the permittee to immediately cease
any work if it appears that said work is being done in violation of the terms of
this permit.  Thereafter, work shall not be undertaken until said violation is
corrected to the satisfaction of the City Engineer or his duly authorized repre-
sentative.

14.  Future Moving of Installation.  Whenever construction, reconstruction
or maintenance work on the street or City property may require upon request of the
grantor, the installation provided for herein shall be removed or revised at the
sole expense of the permittee within five (5) days of such notice.

15.  Expense of Inspection.  On work which requires the presence of an
employee of the grantor as inspector, the salary, traveling expense and other
incidental expense of such inspection shall be paid by the permittee upon presenta-
tion of a bill therefor.

16.  Maintenance.  The permittee agrees by the acceptance of this permit to
exercise reasonable care to maintain properly any encroachment placed by permittee in
the street or City property and to exercise reasonable care in inspecting for and
immediately repairing and making good any injury to any portion of the street or City
property which occurs as a result of the maintenance of the encroachment in the street
or City property or as a result of the work done under this permit,  including any and
all injury to the street or City property which would not have occurred had such work
not been done or such encroachment not placed therein.  Encroachments on City property
shall be maintained so that they have a presentable appearance.

In the event this permit is granted in whole or in part for the purpose of
allowing plants to be installed and maintained by permittee, permittee shall maintain
such plants in presentable and healthy condition, including but not limited to, proper
watering, fertilizing, pruning and replacement where necessary and permittee shall
maintain all planter beds, areas and containers in which such plants are installed and
maintained free from weeds, rubbish, and garbage.  If any planter is to be maintained
pursuant to this permit, it shall be equipped with a suitable irrigation system.  The
grantor may revoke the permit for failure to maintain the encroachment.

17.  Submit Location Plan.  Immediately upon completion of any underground or
surface work, the permittee shall furnish to the City Engineer plans showing
location and details of such work.

18.  Liability for Damage.  The permittee is responsible for all liability for
personal injury or property damage which may arise out of work herein permitted, or
which may arise out of failure on the permittee's part to perform his obligations
under the permit in respect to maintenance.  In addition, permittee is responsible
for all liability of the grantor, its officers and employees which may arise out of,
or be connected with, the duties  to be performed by the grantor, its officers and
employees in connection with the approval of the design of said work, the inspection
of said work, or the supervision of said work, or the existence of the encroachment,
pursuant to the terms of this permit.  In the event any claim of liability heretofore
mentioned is made against the grantor, or any department, officer, or employee thereof,
permittee shall defend, indemnify and hold them and each of them harmless from such
claim, and any loss, cost, expense or liability arising therefrom including, but not
limited to, attorneys' fees.

RESOLUTION No. 81-845
NOV 1 7 1981
11-18

19. Repairs. Permittee shall repair any existing improvements damaged in the course of the work, or by the existence of the encroachment, or any maintenance done in conjunction therewith. In the event permittee shall not accomplish repair as required pursuant to this permit, grantor shall have the right, but not the obligation, in addition to all other rights grantor has at law and in equity, to cause repairs to be made on behalf of permittee. In the event grantor shall so elect, permittee shall pay to grantor on demand the cost of any such repairs, including but not limited to grantor's administrative expenses. The right of grantor to make repairs pursuant to this paragraph may be exercised without notice, and no prior notice from grantor to permittee concerning repairs shall be construed to require grantor to give any additional notice to permittee prior to accomplishing repairs according to this paragraph, nor shall the absence of any such notice or additional notice in any manner decrease or affect permittee's obligation to pay the costs of such repairs. Grantor shall in no event be liable for any loss suffered by permittee as a result of making repairs according to this paragraph.

20. Care of Drainage. If the work herein contemplated shall interfere with the established drainage, ample provision shall be made by the permittee to provide for it as may be directed by the grantor.

21. Liability Insurance. Permittee shall take out, pay for and maintain during the period in which this permit is in effect, a policy of public liability and property damage insurance protecting himself, his agents and employees against the liability or injury or death sustained or suffered by the public or damage to the property of the public by reason of the work carried on under this permit or the encroachment maintained hereunder. Public liability insurance shall be for the limits of at least $300,000 for the injuries to one and $500,000 for injury to more than one person and property damage limits shall be for the sum of $100,000. The insurance shall be placed with a company satisfactory to the Risk Management & Insurance Division of the Department of General Services, and one copy of the Certificate shall be furnished to the Risk Management & Insurance Division, prior to the date that work under this permit is commenced. Said policy or policies of insurance shall name the grantor, its officers and employees as additional named insureds and shall contain an endorsement precluding cancellation or reduction in coverage without giving the Risk Management & Insurance Division at least ten (10) days notice prior thereto.

22. Surety Bond. If required on the face hereof, this permit shall not be effective for any purpose unless and until the permittee files with the Risk Management & Insurance Division of grantor a corporate surety bond in the amount specified on the face hereof, said bond to fully assure the performance by permittee of all obligations imposed upon permittee under the provisions of this permit.

23. Permittee's Obligations to Remove Encroachments. In the event this permit is revoked at any time, within five days thereafter, permittee shall commence work to remove any improvement established pursuant to this permit and to restore the affected City property and any street to the condition it was in prior to the commencement of the encroachment, and permittee shall diligently prosecute such work to completion. In the event permittee does not commence such work within five days or if, at any time after commencement of such work, the City Engineer determines that permittee is not diligently pursuing such work, grantor may do,

- 4 -

RESOLUTION No. 81-845
NOV 1 7 1981

11-18

23.  <u>Permittee's Obligations to Remove Encroachments</u> (cont'd)

or cause to be done, such work, and permittee shall pay the cost of same, including, but not limited to grantor's administrative costs, upon demand.  Grantor shall in no event be liable to permittee for any loss suffered by permittee, directly or indirectly, as a result of grantor accomplishing any work pursuant to this paragraph.

_____
                                MAYOR

ATTEST:

_____
CITY CLERK

- 5 -

RESOLUTION No. <u>81--845</u>

NOV 1 7 1981

11-18

# EXHIBIT B

# ORDINANCE NO. 2009-022

Adopted by the Sacramento City Council

April 30, 2009

## AN ORDINANCE REPEALING AND REENACTING CHAPTER 12.12 OF THE SACRAMENTO CITY CODE, RELATING TO ENCROACHMENT PERMITS

## BE IT ENACTED BY THE COUNCIL OF THE CITY OF SACRAMENTO:

Section 1

Chapter 12.12 of the Sacramento City Code is hereby repealed.

Section 2

Chapter 12.12 of the Sacramento City Code is hereby reenacted as follows:

## ENCROACHMENT PERMITS, EXCAVATIONS, AND PLACEMENT OF FACILITIES IN PUBLIC RIGHTS-OF-WAY

### ARTICLE I
### IN GENERAL

**12.12.010 Definitions**

The following terms used in this chapter shall have the meanings set forth below:

"Applicant" means the person applying for an encroachment permit, as well as any person owning or operating facilities or requesting to install facilities for which the encroachment permit is being requested.

"City" means the City of Sacramento.

"Director" means the director of the Department of Transportation or his or her designee.

"Encroachment" means the use of City rights of way to perform excavations, construction related work, window cleaning; to access overhead or underground public or private utilities; to pressure wash sidewalks or driveways; to place or store construction equipment, materials, trailers, containers, dumpsters, or bins; or for any other similar or related purposes.

"Permittee" means the person to whom an encroachment permit is issued, as well as the person owning or operating the facility or installation for which the encroachment permit is issued.

"Person" means any individual, agency or other public or private entity, firm, business, franchisee, contractor, corporation, partnership or other combination of individuals of whatever form or character, excepting the city or a contractor performing work for the city.

"Public right of way" means the area across, beneath, in, on, over, under, along and within the public streets, roads, sidewalks, and alleys within the City and includes public utility easements dedicated to the City.

"Utility box" means any underground box, terminal or enclosure.

"Utility cabinet" means any above ground cabinet, pedestal, transformer, communications terminal or box, feature or appurtenance.

"Utility company" means a public or private entity, excluding the City of Sacramento, that provides utility services including but not limited to electricity, gas, sewer, water and communications.

"Utility pole" means any structure used to support overhead wires, cables, transformers, and appurtenances, and includes guy wires used for supporting utility poles.

"Utility vault" means any underground room providing access to subterranean utility equipment.

## 12.12.020 Encroachment Permit Required – Except Emergencies

It is unlawful for any person to encroach within public rights of way or other City property without first obtaining an encroachment permit from the director and to comply with the requirements of the permit.

Nothing in this chapter shall be construed to prevent any person maintaining any utility facilities in or under any right of way by virtue of any law, ordinance or permit, from encroaching in the public right of way as may be necessary for the preservation of life or property when the necessity arises, provided that the person shall notify the director within one day after the offices of the city are first opened subsequent to the encroachment. Except as specifically provided otherwise in this chapter, encroachments authorized by this section shall be subject to all fees and requirements of this chapter.

## 12.12.030 Application-Requirements

A.   Before the City issues an encroachment permit, the applicant shall submit a written application on a form furnished by the director, setting forth:

　　1.　The name and residence or business address of the applicant;

　　2.　The location and approximate area of the encroachment;

　　3.　The purpose, a plan or drawing, and a schedule for the proposed   period of encroachment;

　　4.　A traffic control plan, if required.

　　5.　Any additional information required by Article II of this Chapter relating to excavations.

B.    The applicant shall pay a nonrefundable fee in an amount established by resolution of the city council to defray the city's costs to process the application and provide for site inspections. The fee may include costs incurred by the city to maintain an inventory or database of facilities that are installed, repaired or removed. If the director determines the fee to be inappropriate based on the amount of work to be done to process the application, to inspect the work and to maintain said inventory or database, or for other good cause shown, the director may waive the fee, in whole or in part.

C.    No fee or requirement authorized or imposed pursuant to this chapter shall be construed to affect or alter in any way any obligation of public and private utilities with facilities installed in any public right of way to relocate the facilities at no cost to the city, in the event that relocation is required by the city to accommodate a proper governmental use of the public right of way.

## 12.12.040 Permit—Issuance

A.    Upon receipt of a written application for an encroachment permit, the director shall determine and set forth all requirements, approve or disapprove the application, and, if approved, sign and return it to the applicant with a permit number. .

B.    No permit shall be transferable.

C.    Each permit shall state a time period for commencement and completion of all the permitted work. The director may grant extensions of time for good cause.

D.    The director may modify the permit if circumstances or conditions appearing after commencement of the work is commenced make it impossible to comply with the requirements of the permit.

E    No person in violation of any requirement of this chapter shall be issued an encroachment permit, nor shall any contractor or agent apply for or be issued an encroachment permit on the person's behalf, until the outstanding violation is corrected or a plan for correction is approved by the director, which approval shall not be unreasonably withheld. The foregoing requirement is in addition to any penalty or remedy for violation that may be imposed or sought by the city at law or equity.

## 12.12.050 Compliance with safety regulations

The permittee shall comply with all current federal, state and local safety regulations and all federal and state disability laws including those requiring an accessible path of travel.

## 12.12.060 Cleaning up streets

The permittee shall remove from the public rights of way all obstructions, surplus materials, debris and waste matter of every description caused by and accumulated from the permittee's work or activities.

## 12.12.070 Failure to complete work within specified time

If any part of the work referred to in this chapter is not completed within the time set forth in the permit, the director may provide written notice to the person performing the work to complete the work within forty-eight (48) hours thereafter, legal holidays excepted. If the work is not completed within this time period, the director may cause the work to be performed, including such work as will restore the work area to a safe and passable condition until the work can be completed. The cost thereof, including any inspection costs and administrative overhead incurred by city, shall be paid by the permittee within 30 days of notice of the cost.

### 12.12.080 All work to be under supervision of the director

Any person engaged in activities authorized under an encroachment permit shall, at all times while such work is in progress, keep at the job location the original permit, or a copy thereof, and on demand, exhibit the permit to the director or any police officer. At all times while the work is in progress the person shall also maintain at the job location, a sign, barricade, or other device bearing the person's name. If required by the director, the person performing work shall also display the permit number and the City's Construction Hotline Number.

### 12.12.090 Blanket permits

The director may issue blanket permits to any person to encroach within the public right of way or public utility easement for utility service connections, for the location of trouble in utility conduits or pipes and for making repairs thereto, or for emergency purposes. Blanket permits shall be issued on a yearly basis only, and shall authorize only encroachments referred to in this section. Except as specifically provided otherwise in this chapter, encroachments authorized by this section shall be subject to all fees and requirements of this chapter.

### 12.12.100 Liability of city

Neither the city nor any city officer or employee shall be responsible for any damage or loss caused by any encroachment or excavation in any public right of way made by any person under the authority of a permit issued pursuant to the provisions of this chapter. The permittee shall be solely liable for any damage or loss arising out of or in any way connected with such encroachment or excavation, and shall fully indemnify, hold harmless and defend city, its officers and employees from and against any and all suits, actions, judgments, losses, costs, demands, claims, expenses (including attorney's fees), damages, and liabilities of every kind arising out of or in any way connected with such encroachment or excavation, whether or not caused in part by the passive negligence of the city.

### 12.12.110 Additional requirements.

A.    In addition to the requirements of this chapter, cable television franchisees and licensees shall construct facilities in accordance with the provisions of Chapter 5.28 of this code. In the event of any conflict between the requirements of this chapter and the provisions of Chapter 5.28, the provisions of Chapter 5.28 shall govern.

B.  All utility installations permitted under this chapter shall, upon demand of the director, be relocated or modified if required by the city to avoid potential conflicts with a proper governmental use of a public right of way.  All expenses incurred in relocating, lowering lines, potholing or marking of facilities to determine their exact location after the original installation shall be paid for by the permittee.

C.  Upon completion of underground or surface work permitted under this chapter and at the discretion of the director, permittee shall furnish as built plans of the installation showing a correct plan view to scale, details and a profile showing the locations of all elements of the installation based on data obtained in the field during construction.

D.  Permittees other than utility companies shall comply with the following additional requirements:

1.  Permittee shall take out, pay for and maintain during the period in which the permit is in effect, a policy of public liability and property damage insurance protecting permittee, permittee's agents and employees against any liability, injury or death sustained or suffered by the public or damage to the property of the public by reason of the work carried on under the permit.  The public liability insurance shall be for the limits of at least three hundred thousand dollars ($300,000.00) for injury to one and five hundred thousand dollars ($500,000.00) for injury to more than one person, and the property damage insurance limit shall be at least one hundred thousand dollars ($100,000.00).  The insurance shall be placed with a company satisfactory to the risk management division of city, prior to the date that work under the permit is commenced. The policy or policies of insurance shall name the city, its officers and employees as additional named insured's and shall contain an endorsement precluding cancellation or reduction in coverage without giving the risk management division at least ten (10) days written notice prior thereto.

2.  If required on the face thereof, the permit shall not be effective for any purpose unless and until the permittee files with the risk management division a bond or other security approved by the risk management division in the amount specified on the face of the permit, said bond or other security to fully assure the performance by permittee of all obligations imposed upon permittee under the provisions of the permit and this chapter.

**12.12.120 Enforcement.**

Violation of the terms, conditions and requirements of this Chapter and any permit issued pursuant to this chapter by the permit holder shall subject the permit holder to the following actions and penalties:

A.  Administrative Penalties. The director may issue an order imposing an administrative penalty to any person violating any provision of this chapter.

1.  Notwithstanding any contrary provision of this code, each day a violation of the

following code provisions occurs shall constitute a separate violation, and shall be subject to a separate penalty:

    a.    Section 12.12.020;

    b.    Section 12.12.070;

    c.    Section 12.20.080;

2.    If applicable, additional administrative penalties may be assessed in accordance with the provisions of Chapter 12.20.

3.    The administrative penalty for each violation of any provision of this chapter shall be seven hundred and fifty dollars ($750.00). Violations of a specific section of this chapter by the same person occurring during the same work but located in different blocks or located in the same block but occurring on different days or at different times on the same day shall constitute separate violations for which separate administrative penalty orders may be issued.

4.    In addition to the aforementioned penalties, the city may withhold issuance of permits for encroachment or excavation in a city street (issued pursuant to Chapter 3.76 or Chapter 12.12 of this code) to any person receiving a final administrative penalty order for a violation of any specific provision of this chapter three times within a two year period; the city may withhold issuance of permits for a period of not longer than two years after said administrative penalty orders are final. Multiple administrative penalty orders issued for continuing violations occurring on the same calendar day shall be considered one administrative penalty order for purposes of this section.

B.    Imposition of the Administrative Penalties. The administrative penalty order shall be imposed in accordance with the provisions of Section 128.010 of this code, and shall contain the following:

1.  The name and address of the violating party, if known;

2.    The location, date and time of the violation;

3.    A description of the act(s) or condition(s) violating this chapter;

4.    The amount of the administrative penalty, with instructions for submitting payment to the city;

5.    A statement indicating that the administrative penalty may be appealed, in accordance with the provisions of Section 1.28.010(D)(4) of this code, by filing a written notice of appeal with the city clerk no later than twenty (20) days after the order is issued to the violator;

6. A statement indicating that the order imposing the administrative penalty shall be final if it is not appealed within the time required;

7. A statement indicating that a party upon whom a final administrative penalty has been imposed may seek review of the order imposing the penalty pursuant to California Code of Civil Procedure Sections 1094.5 and 10946.  (Ord. 2005-082 § 1: Ord. 2002-004 § 8, 2002)

All other remedies available to the City including but not limited to criminal       and civil proceedings.

## ARTICLE II
## ADDITIONAL REQUIREMENTS FOR EXCAVATIONS

### 12.12.130 Permit requirements for excavations

It is unlawful for any person to make or cause to be made any excavation in the public right of way, or any other public place for the installation, repair or removal of any pipe, conduit, duct, tunnel, utility pole, or any other facility or installation or for any other purpose without first obtaining from the director an encroachment permit in compliance with this Article.

### 12.12.140 Permit—Requirements.

In addition to the requirements for an encroachment permit set forth in Article I, an application to excavate shall include the following:

A. The specific location and area of the excavation, including its approximate length and width, and, if the excavation is in a street, whether it is parallel or transverse to the direction of the travel lanes.  The applicant shall attach to the application form a plan showing the location of the proposed excavation, the dimensions thereof, and any other details the director may require.

B. Except as otherwise provided by franchise or agreement, at the time any permit is issued for excavation of a paved street, the applicant shall pay a trench cut cost recovery fee, in addition to the fee required by Article I of the chapter.  The fee shall not exceed an amount reasonably necessary to recover the estimated costs for all future maintenance, repair or resurfacing that would be necessary to fully mitigate the damage and degradation caused by the excavation to the pavement located adjacent to the trench where the excavation occurs.  The fee shall be highest for excavations in newly surfaced streets and shall decrease as the age of the street surface being excavated increases.  The amount of the trench cut cost recovery fee shall be established from time to time by resolution of the city council.  The director shall adopt procedures requiring the payment of the trench cut cost recovery fees by all city departments and divisions performing excavations in city streets.

C.    The trench cut cost recovery fee required by subsection B of this section, shall not be charged for the following excavations: (1) excavations in a street that the city has scheduled for resurfacing either during the fiscal year (July 1st through June 30th) when the encroachment permit is issued or during the immediately following fiscal year; (2) excavations in a street where the existing pavement quality is already so poor that the pavement quality index, as defined by the city's pavement management system, is less than four on the date the encroachment permit is issued; (3) excavations for potholing or to install utility poles; (4) excavations that will include resurfacing of the street where the excavation is made, provided that the resurfacing is approved by the director; and (5) excavations made for a utility relocation required by the City to accommodate a proper governmental use of a street, alley, sidewalk or other public place. As used in this chapter, the term resurfacing shall mean any repaving, overlay, seal or reconstruction which constructs a new pavement surface over the entire width of the street, excluding crack seals.

D.    All moneys paid to the city under subsection B of this section, shall be deposited in a special fund or funds and shall be expended only for the resurfacing of city streets.

E.    Except for requirements subject to the exclusive jurisdiction of another regulatory agency, the location, depth and other physical characteristics of any facilities for which an encroachment permit is issued shall be subject to approval of the director, and all backfilling, compaction and pavement restoration performed for any excavation shall comply with the requirements of this chapter.

F.    No fee or requirement authorized or imposed pursuant to this chapter shall be construed to affect or alter in any way any obligation of public and private utilities with facilities installed in the public right of way to relocate the facilities at no cost to the city, in the event that relocation is required by the city to accommodate a proper governmental use of the public right of way.

## 12.12.150 Restoration of pavement.

Unless otherwise specified in the permit, restoration of the pavement or other surface of any right of way or other public place shall be performed by the permitee. Nothing in this section shall relieve the person opening or tearing up any pavement from the responsibility to maintain the excavation or installation in a safe condition until it is repaved or restored.

If the temporary pavement over an excavation is not maintained in a safe and acceptable manner until restored, and the permittee does not respond or is not able to respond in a timely manner to repair or replace any temporary pavement as required by the director, the director may cause the work to be done. The cost thereof, including any inspection costs and administrative overhead incurred by the city, shall be assessed against the permittee.

## 12.12.160 Opening, backfilling and paving trenches.

A.  No trench shall be opened in any street for the purpose of laying pipes, conduits or ducts more than four hundred (400) feet in advance of the pipe, conduit or ducts being placed in the trench, except when the prior written consent of the director has been obtained.

B.  All excavations shall comply with the standards and requirements established from time to time by the director for compaction, backfill and pavement restoration.  The standards and requirements may vary for different excavations, taking into consideration relevant factors, such as: (i) the location, type and extent of excavation performed, (ii) the condition of the surface being excavated, and (iii) the period of time elapsed since the construction or most recent resurfacing of the surface being excavated.  The standards and requirements shall be reviewed at least once every five years to determine whether any changes can be made to prevent or substantially reduce the degradation and damage caused to the street surface by excavation.  As part of such review, the director shall provide affected utility companies with an opportunity to review and comment upon the standards and requirements and any changes proposed thereto.

C.  The excavated pavement and other rubble shall be removed, together with any surplus excavated material, within one working day from the time such material is placed upon the street, provided that exceptions to this requirement may be approved by the director.  After backfilling is completed, and prior to repaving the cut, the contractor or permittee shall remove all loose paving material and trim the edges of the excavation at the street surface to the satisfaction of the director.

D.  Whenever any caving occurs in the sidewalls of any excavation, the pavements above such caving shall be cut away.  In no case shall any void under a pavement be filled by any side or lateral tamping.

## 12.12.170 Repair of sunken pavement over excavation.

In case the pavement or the surface of the street or alley over any excavation should become depressed or broken at any time within five years after the excavation has been completed and before resurfacing of the street or alley, natural wear of the surface excepted, the permittee shall, upon written notice from the director, immediately proceed to inspect the depressed or broken area over the excavation to ascertain the cause of the failure.  The permittee shall make repairs to the installation or backfill and have the pavement restored as specified by the director, within such time period as may be specified by the director.  The trench cut cost recovery fee established by Section 12.12.140(B) of this chapter, shall not be charged for work performed under this section.  If the pavement is not restored as specified by the director within the time period specified by the director, and unless delayed by a strike or conditions beyond permittee's control, the director may cause the work to be done after giving the permittee twenty-four (24) hours final notice.  The cost thereof, including any inspection costs and administrative overhead incurred by city, shall be assessed against the permittee.  After the cost is paid to city, the city shall be responsible for any future repairs of that portion of pavement over the excavation that was repaired by city forces.

**12.12.190 Coordination of excavations.**

A.   Any utility company owning, operating or installing in rights of way or any other
     public places facilities providing water, sewer, gas, electric, communication,
     video or other utility services, shall prepare and submit to the director a utility
     master plan, in a format specified by the director, that shows the location of the
     utility company's existing facilities in city streets, alleys, sidewalks and other
     public places, and shows all of the utility company's planned major utility work
     in city streets, alleys, sidewalks and other public places.  Utilities shall submit
     an initial utility master plan no later than one hundred eighty (180) days after the
     effective date of the ordinance adopting this section.  Thereafter, each utility
     company shall submit semi-annually, on the first regular business day of
     January and July, a revised and updated utility master plan.  As used in this
     subsection, the term planned major utility work refers to any and all future
     excavations planned by the utility company when the utility master plan or
     update is submitted that will affect any public right of way or other public place
     for more than five days, provided that the utility company shall not be required
     to show future excavations planned to occur more than five years after the date
     that the utility master plan or update is submitted.

B.   Any city department owning, operating or installing utility facilities in public
     rights of way shall prepare and submit to the director a utility master plan that
     shows the location of the department's existing facilities in rights of way and
     other public places, and shows all of the department's planned major utility work
     in rights of way and other public places.  An initial utility master plan shall be
     submitted no later than one hundred eighty (180) days after the effective date of
     the ordinance adopting this section.  Thereafter, each such department shall
     submit semi-annually, on the first regular business day of January and July, a
     revised and updated utility master plan.  As used in this subsection, the term
     planned major utility work refers to any and all future excavations planned by
     the department when the utility master plan or update is submitted that will
     affect any public right of way or other public place for more than five days,
     provided that the department shall not be required to show future excavations
     planned to occur more than five years after the date that the utility master plan
     or update is submitted.

C.   The director shall make all utility master plans submitted in accordance with
     subsections A and B of this section available for public inspection.

D.   The director shall prepare a five year repaving plan showing the street
     resurfacing planned by the city for the next five years.  The five year repaving
     plan shall be revised and updated on a semi-annual basis after receipt of the
     utility company's and city departments' utility master plans and updates.  The
     director shall make the city's five year repaving plan available for public
     inspection.  In addition, after determining the street resurfacing work that is
     proposed for each year, the director shall send a notice of the proposed work to
     all utility companies that have current utility master plans on file.

E.   Prior to applying for an encroachment permit, any person planning to excavate

in the public right of way or other public places shall review the utility master plans and the city's five year repaving plan on file with the director and shall coordinate, to the extent practicable, with the utility and street work shown on such plans to minimize damage to, and avoid undue disruption and interference with the public use of such rights of way or other public places.

F.     Excavations in city streets disrupt and interfere with the public use of city streets and damage the pavement. The purpose of this section is to reduce this disruption, interference and damage by promoting better coordination among utility companies making excavations in city streets and between those utility companies and the city. Better coordination will assist in minimizing the number of excavations being made wherever feasible, and will ensure that excavations in city streets are, to the maximum extent possible, performed before, rather than after, the resurfacing of the streets by the city. Coordination also provides a means for utility companies to avoid payment of a trench cut cost recovery fee either by eliminating the need for a new excavation, or, if an excavation is made, by allowing the excavation to qualify for an exemption from the trench cut cost recovery fee pursuant to Section 12.12.140 of this chapter. However, even utility companies performing the best possible coordination will find it necessary to make excavations that do not qualify for an exemption from the trench cut cost recovery fee. For this reason, and in order to provide a further incentive for such utility companies to perform the best possible coordination, if a utility company coordinates its work with other utility companies and/or the city so that no trench cut cost recovery fee is required for at least eighty (80) percent of the linear feet of its total excavations in city streets during a calendar year, the utility company shall receive a refund, without interest, of one-quarter (twenty-five (25) percent) of the trench cut cost recovery fees the utility company paid during that year. If a utility company coordinates its work with other utility companies and/or the city so that no trench cut cost recovery fee is required for at least ninety (90) percent of the linear feet of its total excavations in city streets during a calendar year, the utility company shall receive a refund, without interest, of one-half (fifty (50) percent) of the trench cut cost recovery fees the utility company paid during that year. If a utility company coordinates its work with other utility companies and/or the city so that no trench cut cost recovery fee is required for at least ninety-five (95) percent of the linear feet of its total excavations in city streets during a calendar year, the utility company shall receive a refund, without interest, of one hundred (100) percent of the trench cut cost recovery fees the utility company paid during that year. Upon appropriation by the city council, city funds authorized for the purpose of maintenance, repair or resurfacing of city streets shall be transferred to the special fund or funds created pursuant to Section 12.12.140(D) of this chapter, to replace any amount refunded pursuant to this subsection. The director shall adopt procedures for implementing this subsection.

## 12.12.200 Appeal of director's decision—Protest of trench cut cost recovery fee.

A.     A person directly and adversely affected by a decision made by the director pursuant to the provisions of this chapter may appeal the director's decision by filing a written notice of appeal with the city manager no later than ten (10)

working days after receiving notice of the director's decision. The notice of appeal shall set forth the name, mailing address and telephone number of the person appealing. The notice of appeal shall include or attach a statement describing the action being appealed, setting forth the grounds for the appeal, and describing the action requested of the city manager. The scope of the appeal shall be limited to the grounds specified in the notice of appeal. No later than thirty (30) days after the filing of a timely notice of appeal, the city manager shall render a decision on the appeal. The city manager's decision may affirm, reverse or modify the decision appealed. A copy of the city manager's decision shall be provided to the person appealing at the address shown on the notice of appeal. Said person may appeal the city manager's decision to the city council by filing a written notice of appeal no later than ten (10) working days after the city manager's decision is received by the person, in accordance with the provisions of Sections 1.24.010 and following of this code.

B.   Any person required to pay a trench cut cost recovery fee pursuant to Section 12.12.140(B) of this chapter who desires to protest or otherwise challenge imposition of the fee shall tender to the city payment in full of the fee when due, accompanied by a written notice containing the following information:

   1.   A statement that the required payment is tendered under protest; and

   2.   A description of the factual and legal basis for the protest.

C.   Any judicial action or proceeding to attack, review, set aside, void or annul the imposition of a trench cut cost recovery fee for which a written notice of protest is filed pursuant to subsection B of this section, shall be filed no later than ninety (90) days after the notice is received by the city.


## ARTICLE III
## UTILITY FACILITIES

### 12.12.210 Purpose.

The purpose of this article is to promote the general health, safety and welfare of the citizens of the City of Sacramento by:

A.   Establishing guidelines for the placement in the public right of way or private property of utility poles, boxes, cabinets, vaults and related facilities.

B.   Establishing guidelines for the visual appearance of utility poles, boxes, cabinets, vaults and related facilities in order to insure that their appearance will not adversely impact the aesthetic quality of City neighborhoods.

C.   Establishing guidelines to ensure compliance with disability access laws and safe passage of pedestrian and vehicular traffic.

D.   Establishing guidelines to ensure the public is notified of proposed utilities on

or adjacent to their property.

**12.12.220  Permits and approvals.**

No person shall install any utility pole, cabinet, vault or box or related facilities in any street without first obtaining an encroachment permit from the City; pay any fees and post any security required by the City; and in the course of constructing, installing, replacing, maintaining or repairing any utility pole, box, vault, cabinet or related facilities, comply with all applicable requirements of the City and any terms or conditions of encroachment permits, licenses, authorizations or approvals.

For large scale or long term projects, the director shall be authorized to establish special fees and payment plans to defray the costs incurred by the Department of Transportation to supervise and regulate the installation of utility boxes and utility cabinets within the streets of the City.  The director is authorized to approve reasonable schedules for installation of utility boxes and utility cabinets within the City streets for the purpose of promoting safety, reducing inconvenience to the public, and insuring adequate restoration and repair of the streets.  A person and its officers, agents, contractors and subcontractors shall comply with any and all such schedules.

**12.12.230 Use of streets—Interference, Appearance, and Accessibility.**

Each utility pole, box, vault, cabinet and related facilities, shall be located, installed and maintained so that none of the facilities: endanger the lives or safety of persons; interfere or damage public improvements; unnecessarily hinder or obstruct the free use of public rights of way or other public property; or cause any interference with the rights and reasonable convenience of property owners who adjoin any of the streets or other public property where the utility pole, box or cabinet is located.

The following standards shall constitute minimum standards for the location and appearance of above ground utility poles, boxes, vaults, cabinets and related facilities unless otherwise approved by the director.

A.  Interference

    1.  Utility cabinets shall not be placed at locations where the City Traffic Engineer determines based on engineering standards, that such placement would create a hazard.  These locations include driveways, intersections, and road tapers where stopping sight distance is required.

    2.  Utility cabinets shall not be placed in planter strips between the sidewalk and the curb.

    3.  Utility boxes and cabinets shall be placed at property lines whenever possible.

    4.  Utility vaults installed for private development should be installed on private property to avoid diminishing planter or mow strips.

    5.  To the extent practicable and reasonable, each company shall accommodate the desires of any property owner respecting location within easements or rights-of-way traversing private land of the property owner.

B. Appearance

1. Utility cabinets shall be no higher than six feet unless otherwise approved by the director.
2. No exposed conduit or raceways will be permitted and all conductors, transformers, and other related equipment shall be concealed, except pole risers or drops.
3. Utility cabinets requiring power shall have the power pedestals attached to the utility cabinets.
4. No more than one utility cabinet per lot and adjacent sidewalk shall be allowed unless otherwise approved by the director.
5. Utility Boxes placed in sidewalks shall be centered in sidewalk flags.
6. Utility Vaults should be located behind the curb and not within the sidewalk whenever possible.
7. Colors shall be from earth tone ranges and utility cabinet coatings shall be graffiti resistant.

C. Accessibility

1. Utility poles and utility cabinets shall not be placed within the sidewalk or within any element of a pedestrian ramp and shall comply with disability access laws.
2. Utility poles shall be located behind sidewalks and out of pedestrian travel ways whenever possible.
3. All utility box grates and covers shall be non-slip, withstand heavy vehicular loading, and be adjustable to grade unless otherwise approved.
4. Utility Box ventilation grates shall be of a non-slip, heal-safe design, and shall not be located in high volume pedestrian areas whenever possible.

**12.12.240 Restoration of Public right of way.**

Any disturbance by a person of pavement, sidewalk, driveways, landscaping, striping or other surfaces shall be restored, repaired or replaced to the condition existing prior to the disturbance as determined by the director.

Any disturbance of landscaping, fencing or other improvements upon private property, including private property traversed by easements or rights-of-way utilized by a person, shall, at the sole expense of the person, be promptly repaired, restored, or replaced to the reasonable satisfaction of the property owner as soon as possible. Each person shall, through authorized representatives, make a reasonable attempt to personally contact the owners or occupants of private property in advance of entering such property for the purpose of commencing any installation of facilities within easements or rights-of-way traversing such property.

**12.12.250 Erection of poles or structures for overhead cables, wires or lines.**

Except as otherwise permitted by law, franchise or elsewhere in this Code, no company shall be authorized to construct or install new poles or new wire-holding structures for commercial uses on or within public rights of way or City owned property for the purpose of placing overhead cables, wires, lines or other facilities unless approved by the Director.

**12.12.260 Undergrounding.**

Except as otherwise permitted by law, franchise or elsewhere in this Code, in all areas of the City where the cables, wires and other similar facilities of a utility company are placed underground, each utility company shall construct and install its cables, wires and other facilities underground. Utility cabinets may be placed above ground if existing technology reasonably requires, but shall be of such size and design and shall be so located as not to be unsightly or unsafe as determined by the director.

In any area of the City where there are certain cables, wires and similar facilities of a utility company underground and at least one operable cable, wire or like facility of a utility company suspended above ground from poles, a utility company may construct and install its cables, wires and other facilities from the same poles.

With respect to any cables, wires and similar facilities constructed and installed by a utility company above ground, the company shall, at its sole expense, reconstruct and re-install such cables, wires or other facilities underground pursuant to any project under which the cables, wires or other like facilities of such utilities are placed underground within an area. The duty of a utility company to underground shall arise if all existing above ground like facilities of such utilities are required to be placed underground.

**12.12.270 Removal following termination or dissolution of permittee.**

Upon dissolution or termination of a permittee, the permitee, at its sole expense, shall, unless relieved of the obligation by the City, remove from the streets all aboveground facilities, and properly abandon underground facilities as determined by the City, including, but not limited to utility poles, boxes, vaults, cabinets, cables attached to or suspended from poles, which are not purchased by another company and any related facilities.

**12.12.280 Acquisition by successor permittee**

Any person acquiring the assets or facilities of a dissolved or terminated permittee, shall apply for and obtain such encroachment permits, licenses, authorizations or other approvals and pay such fees and deposit such security as required by the City, shall conduct and complete the work of removal in compliance with all such requirements, and shall restore the streets to the same condition they were in before the work of removal commenced. The work of removal shall be completed not later than one year following the date of termination or dissolution of the prior permittee.

**12.12.290 Maintenance and repair.**

The permittee shall maintain their above ground utilities and utility cabinets in good condition and repair.

Adopted by the City of Sacramento City Council on April 30, 2009 by the following vote:

Ayes:       Councilmembers Cohn, Fong, Hammond, McCarty, Pannell, Sheedy, Tretheway, Waters, and Mayor Johnson.

Noes:       None.

Abstain:    None.

Absent:     None.

Mayor Kevin Johnson

Attest:

Shirley Concolino, City Clerk

Passed for Publication:  April 21, 2009
Published:  April 24, 2009
Effective:  May 22, 2009