UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK MAHONEY, et al.,

    Plaintiffs,

v.

CITY OF SACRAMENTO, et al.,

    Defendants.

No. 2:20-cv-00258-KJM-CKD

ORDER

        Plaintiffs Patrick Mahoney, Caroline Kennedy, Suracha Xiong and Brandon Allen, Sr. sought a temporary restraining order from the court on February 4, 2020. Mot. for TRO, ECF No. 2. Defendants City of Sacramento and Sacramento Police Department filed an opposition on February 5, 2020. Opp'n, ECF No. 6. Plaintiffs replied on February 6, 2020. ECF No. 9. Having considered the parties' arguments and the applicable law, the court DENIES plaintiffs' motion. As explained below, on the current record it is not clear plaintiffs have a federal case.

I.     BACKGROUND

        Plaintiffs Patrick Mahoney, Caroline Kennedy, Suracha Xiong and Brandon Allen, Sr. are persons who are homeless, who live in tents placed along North B Street west of 7th Street within the City of Sacramento. Compl., ECF No. 1 ¶¶ 4–7. They seek to represent a class of approximately thirty homeless persons who also reside in tents along North B Street. *Id.* ¶ 8.

/////

Members of the putative class refer to themselves as the "Hopeful Community." *Id.*, Introduction at 2.

A private party contracted with a company to place a portable toilet near the encampment. *Id.* ¶ 16. The portable toilet was placed on January 16, 2020. *Id.* ¶ 17. It remained near the site for nine days. *Id.* ¶ 18. Plaintiffs allege it was maintained during that time by members of the Hopeful Community. *Id.* Plaintiffs allege at the end of the nine days, the portable toilet "was removed on orders of the Sacramento City Police." *Id.* ¶ 19. On February 3, 2020, the portable toilet was once again placed at the site. *Id.* ¶ 21. Plaintiffs state that without an order enjoining defendants from removing it, it will be removed, denying the plaintiffs and the putative class a private and sanitary place to use the bathroom. *Id.* Nothing in the record currently indicates removal of the portable toilet currently at the site is imminent. Plaintiffs say many members of the putative class are disabled and use walkers and wheelchairs, and would thus be without access to restroom facilities if the portable toilet was removed. Mot. at 7.

Defendants assert that the land on which the portable toilets sit is owned by the City of Sacramento. Opp'n at 2. They assert the private company that placed the portable toilets is United Site Services. *Id.* The first portable toilet was removed by United Site Services at the request of the Sacramento Police Department. *Id.* Defendants assert the toilets were removed because they were in violation of Sacramento City Code section 12.12.020, which makes it unlawful for any person to encroach within public rights-of-way or other city property without first obtaining an encroachment permit from the City. *Id.* at 4. Storage of personal property on public property is unlawful and a public nuisance. *Id.* (citing SCC § 12.52.040). Defendants assert plaintiffs have advanced no evidence that they applied for an encroachment permit, which would remedy the problem if granted; as a result, defendants say, plaintiffs' claims are unripe. *Id.* at 7.

In response, plaintiffs proffer supplemental declarations explaining what they way are their efforts to obtain permits. Robin Kristufek, RN, avers she is the person, along with a fellow nurse assisting the homeless, who arranged to have the portable toilet delivered. Declaration of Robin Kristufek ("Kristufek Decl."), ECF No. 9-2 ¶ 7. She does not state that she

2

applied for a permit, but notes that after the removal of the first toilet, she called the City's non-emergency number 3-1-1 to explore obtaining a permit, and was eventually directed to the Sacramento City Encroachment Division. *Id.* ¶ 9. She alleges the woman with whom she spoke told her that "no such permit could be issued by the City, and that she had been specifically told that port-a-potty permits cannot be issued for 'homeless' use." *Id.*

Plaintiffs' counsel, Mark Merin, also avers he called the City's Encroachment Division on February 6, 2020. Supp. Declaration of Mark Merin ("Merin Decl."), ECF No. 9-1 ¶ 3. After speaking with the same woman and receiving the same answer about a policy of the department not to issue encroachment permits for toilets for use by homeless persons, Mr. Merin was referred to Matt Johns, evidently another City employee. *Id.* Mr. Johns stated the City would not issue a permit for a port-a-potty encroaching on a city right-of-way, unless it was in connection with a construction project. *Id.* ¶ 4.

II.     LEGAL STANDARD

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a temporary restraining order, a court applies the factors that guide the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

The Ninth Circuit sometimes employs an alternate formulation of the *Winter* test, referred to as the "serious questions" test. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). "'A preliminary injunction is appropriate when a plaintiff demonstrates… that serious questions

going to the merits were raised and the balance of hardships tips strongly in the plaintiff's favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 986-87 (9th Cir. 2008)) (internal quotations omitted)). Under the "serious questions" approach to a preliminary injunction, the court may use a "sliding scale" where "[t]he elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). *Winter* was decided after the initial articulation of the "serious questions" test, but does not overrule it. *Cottrell*, 632 F.3d at 1135. The "serious questions" test must be applied in conjunction with review of the other two *Winter* factors, likelihood of irreparable injury and whether the injunction is in the public interest. *Id.*

III. DISCUSSION

Without at this point reaching defendants' arguments about ripeness and standing, plaintiffs have not met their burden of demonstrating their entitlement to a temporary restraining order, an "extraordinary remedy never awarded as of right." *Cottrell*, 632 F. 3d at 1131. This is the case even if there is a likelihood of removal of the second portable toilet so as to satisfy the requirement of likelihood of irreparable harm.

Although plaintiffs rightly point out that "an alleged constitutional infringement will often alone constitute irreparable harm," (*Associated Gen. Contractors of Cal., Inc. v. Coalition of Econ. Equity*, 950 F. 2d 1401, 1412 (9th Cir. 1991)), the court is not persuaded plaintiffs have shown the likelihood of a violation of any constitutional right.

Plaintiffs assert that the substantive due process rights of privacy and bodily integrity include the right to eliminate bodily waste in private. Although they cite district court cases from outside the Ninth Circuit for this proposition, (*West v. Dallas Police Dep't*, No. 3:95-cv-01347-P, 1997 U.S. Dist. LEXIS 23900, at *19 (N.D. Tex. July 31, 1997); *Glaspy v. Malicoat*, 134 F. Supp. 2d 890, 896 (W.D. Mich. 2001); and *Thompson v. Spurgeon*, No. 3:13-cv-00526, 2013 WL 2467755, at *6–7 (M.D. Tenn. June 7, 2013)), they cite no controlling authority decided by the Ninth Circuit or the Supreme Court. While the court at times agrees with solely persuasive authority, in this instance the cases plaintiffs cite are not closely enough analogous to the

4

circumstances here for the court to be convinced the cases should be given weight. Generally speaking, the cases address extreme situations in which plaintiffs were forced to soil themselves or eliminate in view of strangers. *See, e.g., West*, 1997 U.S. Dist. LEXIS 23900, at *3–4 (pretrial detainee denied access to restroom during booking process and urinated on booking room floor, then handcuffed with penis still exposed); *see also Glaspy*, 134 F. Supp. 2d at 892–93 (prison visitor denied access to restroom without justification, forced to soil self in presence of guards); *see also Thomson*, 2013 WL 2467755, at *1 (detainee denied access to restroom during rehabilitative program soiled self and forced to return to supervising corrections officer soaked in urine). These cases do not expressly recognize a free-floating constitutional right to private elimination in all circumstances. They stand for the proposition that being forced into specific, immediately foreseeable situations of elimination and self-soiling in full view of authority figures and strangers violates a constitutional guarantee. These cases are insufficiently analogous to the facts in the record to persuade the court plaintiffs' circumstances have a constitutional dimension.

One former member of the Supreme Court has observed, "there are few activities that appear to be more at the heart of the liberty guaranteed by the Due Process Clause of the Fourteenth Amendment than the right to eliminate harmful wastes from one's body away from the observation of others," but he did so in dissent and the Court has not adopted any principle of law applicable here. *See Skinner v. Railway Labor Execs. Ass'n,* 489 U.S. 602, 645–46 (1989) (Marshall, J. Thurgood, dissenting) (majority upholding validity of warrantless urine testing of railway employees). Regardless of the intuitive appeal of Justice Marshall's views, there is an absence of any authority recognizing the specific contours or even the existence of a right to private elimination. Plaintiffs have not met their burden of showing they possess a constitutional right to be violated.

Plaintiffs also have not shown that removal of the portable toilet is constitutionally cognizable under the Eighth Amendment. They do have an Eighth Amendment right to be free from punishment for involuntary conduct under *Robinson v. California*, 370 U.S. 660 (1962), and its progeny. *Martin v. City of Boise*, 920 F. 3d 584, 616 (9th Cir. 2019). *Martin*, in particular, holds that individuals may not be subjected to criminal penalties for engaging in involuntary, life-

5

sustaining actions on public property in the absence of adequate shelter. *Id.* (holding enforcement of Boise's anti-public camping ordinance against homeless people was unconstitutional punishment for involuntary act of sheltering against elements in absence of available homeless shelter space). However, it is not a necessary corollary that the same right is violated by the removal of the portable toilet at issue here. Extending *Martin* to these facts, the City may not prosecute or otherwise penalize the plaintiffs and the Hopeful Community for eliminating in public if there is no alternative to doing so. Given plaintiffs' allegations here, no irreparable injury to plaintiffs' Eighth Amendment rights is likely.

Plaintiffs' further argue the City's removal of the portable toilet constitutes a state-created danger. The test for a state-created danger is whether the agents of the state have engaged in affirmative conduct that leaves the person in danger in a situation more dangerous than the one in which the agents of the state found them. *Munger v. City of Glasgow Police Dept.*, 227 F. 3d 1082, 1086 (9th Cir. 2000). Fatal to plaintiffs' argument here is that the danger alleged is danger to purported constitutional rights, which as the court notes are not colorable on the record currently before the court. Plaintiffs also point vaguely to the likelihood of plaintiffs' "endangering the lives and health of the community at large while suffering humiliation and degradation." Mot. at 7. Between a constitutional right that appears not to exist, and generalized public health threats to an undefined community, plaintiffs have not met their burden of establishing a likelihood of irreparable harm.

Lastly, plaintiffs have not established the alleged harm is likely to occur, as opposed to merely possible. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on the possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief."). Assuming it is possible the portable toilet will be removed even after the filing of this suit, it is plaintiffs' burden to demonstrate a likelihood of irreparable injury, a burden they have not met.

Given the conclusions it reaches above, the court need not address the remaining *Winter* factors or defendants' ripeness and standing arguments.

IV. <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motion for a temporary restraining order is DENIED.

IT IS SO ORDERED

DATED: February 10, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE